THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM T. FRITZ, Defendant-Appellant.

Third District   No. 3—90—0578

Opinion filed January 24, 1992.—Rehearing denied March 25, 1992.

Lawrence Bapst, of State Appellate Defender's Office, of Springfield,
and Robert Agostinelli, of State Appellate Defender's Office, of Ottawa,
for appellant.

Gary L. Spencer, State's Attorney, of Morrison (Gary F. Gnidovec, of
State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HAASE delivered the opinion of the court:

The defendant, William T. Fritz, was convicted of seven counts of theft of over $300 (Ill. Rev. Stat. 1989, ch. 38, par. 16—1). He appeals. We affirm.

The record shows that on December 1, 1989, the defendant was charged with six counts of theft of over $300. Each count alleged that by the use of deception, the defendant had obtained control over the property of Carol Nisly. On December 12, 1989, the State filed a notice to the defendant to appear in court on December 18, 1989.

On December 18, the defendant appeared and stated that he intended to hire his own attorney. The court continued the cause until December 27 for a status hearing on the defendant's efforts to obtain counsel. The court also set the preliminary hearing for January 4, 1990.

On December 27, the defendant told the court that he had still not hired a lawyer. The court continued the cause until January 3, 1990, for another status hearing on the defendant's legal representation.

On January 3, the defendant told the court that although he had funds to hire an attorney, he had not yet retained one. He stated that he was willing to proceed *pro se* at the preliminary hearing. Because of the seriousness of the charges and the court's belief that the defendant needed an attorney, the court appointed the public defender to sit by the defendant at the preliminary hearing as standby counsel.

The defendant represented himself at the preliminary hearing while the public defender sat by his side. The court found that the charges were supported by probable cause. It also set the arraignment for January 10, 1990.

On January 10, the defendant appeared without counsel. He stated that he still intended to hire counsel, and that he had an appointment with one on January 19. The defendant then testified to his attempts to obtain counsel. He admitted that he had not contacted any local attorneys. He said he had contacted four or five attorneys in other cities, but the only one he could name was Paul Gazino.

The defendant then asked the court if the State's Attorney's signature on the information meant that he would be a witness against him. The prosecutor pointed out that the defendant needed counsel to answer such questions. The defendant also asked if the State's Attorney was a witness against him at the preliminary hearing.

The judge continued the cause to January 22 for a status hearing. He also ordered the defendant to either appear with counsel or bring a list of the attorneys he had contacted.

On January 22, the defendant appeared without counsel and said he had an appointment with Paul Gazino on January 25. He was willing to represent himself at the hearing. He also stated that three insurance companies he worked for were interested in the results of the proceedings and were willing to provide counsel for him. The prosecutor stated, however, that no insurance companies were involved in any of the charges.

The judge stated that the cause had to proceed and the defendant needed counsel. He therefore appointed the public defender to represent the defendant at the hearing. He also stated that if the defendant later hired private counsel, the public defender would withdraw. The court then conducted the arraignment.

The defendant made no more requests to represent himself, and the public defender represented him through the rest of the proceedings. The State later amended the information to state a seventh count of theft from Carol Nisly.

At trial, Carol Nisly testified that the defendant committed theft against her on the following dates: March 12, 1986; April 16, 1986; October 8, 1986; June 8, 1987; November 9, 1987; December 28, 1987; and April 11, 1988. Following the presentation of further testimony, the jury found the defendant guilty on all counts.

At the sentencing hearing, the court found it was necessary to sentence the defendant to consecutive terms in order to protect the public from further criminal conduct (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(b)). The judge adopted the prosecutor's argument as part of the basis for his finding. He also noted that the defendant continued his criminal activity even as he was being investigated. Thereafter, the court imposed three consecutive five-year terms of imprisonment and four concurrent five-year terms of imprisonment.

The defendant first argues on appeal that the trial court denied him his right to self-representation by appointing the public defender to assist him at the January 3 hearing and to represent him at the January 22 hearing.

▪ A defendant has the right to represent himself in criminal proceedings. (*People v. Silagy* (1984), 101 Ill. 2d 147, 461 N.E.2d 415.) However, he may lose that right by engaging in serious and obstructionist misconduct, or if he cannot make a knowing and intelligent waiver. (*People v. Ward* (1991), 208 Ill. App. 3d 1073, 567 N.E.2d 642.) If there is some question about his ability to represent himself, it is also proper for the trial court to appoint the public defender as standby counsel. (*People v. Partee* (1987), 157 Ill. App. 3d 231, 511 N.E.2d 1165.) The trial court's decision on the defendant's self-repre-

sentation will only be reversed if it was an abuse of discretion. See *People v. Holmes* (1987), 155 Ill. App. 3d 562, 508 N.E.2d 405.

■ The record shows that the defendant engaged in obstructionist misconduct before trial. Although he stated at five hearings that he would hire counsel, he never did so. As a result, the proceedings were delayed. This conduct, as well as his questions and comments about legal matters, also raised a serious question about his ability to make a knowing and intelligent waiver of counsel. Further, we note that he was allowed to proceed *pro se* at the January 3 hearing, and the public defender was merely standby counsel. Based on the foregoing, we find that the trial court did not abuse its discretion in appointing the public defender.

The defendant next argues that the trial court erred in imposing consecutive terms of imprisonment. He contends that consecutive terms were prohibited under section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a)), because his offenses were committed as part of a single course of conduct and there was no substantial change in the nature of his criminal objective.

The State argues that section 5—8—4(b) sets forth an exception to section 5—8—4(a) if the court finds that consecutive sentences are necessary for the protection of the public. It further argues that the court properly made such a finding in this case.

Section 5—8—4 states:

"(a) *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective ***. ***

(b) The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term *is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record.*" Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4.

Reading the sections together, we find that section 5—8—4(b) does not allow the imposition of consecutive sentences if they are prohibited under the quoted language in section 5—8—4(a). Prior to its amendment by Public Act 85—1030, effective July 1, 1988, subsection (b) served to limit the application of subsection (a). The amendment altered section 5—8—4 in several ways. First, in amending subsection (a), the legislature added criminal sexual assault and aggravated crim-

inal sexual assault (Ill. Rev. Stat. 1989, ch. 38, pars. 12—13, 12—14) to those crimes which are punishable by consecutive sentences even though they were committed as part of a single course of conduct. Second, the legislature changed "may" to "shall," indicating that when these specified crimes are committed, even though as part of a single course of conduct, consecutive sentences are mandatory.

After providing for mandatory consecutive sentencing for certain crimes in subsection (a), the amendment changed subsection (b) to avoid any inconsistency in the statutory language. Prior to amendment, subsection (b) provided that a court *shall not* impose a consecutive sentence in any case unless it was of the opinion that such a sentence was required to protect the public. After amendment of subsection (a), if consecutive sentences were mandatory in certain cases, it made no sense to *forbid* consecutive sentences in the absence of the special finding required by subsection (b). The legislature, in its amending act, therefore inserted the phrase "except as provided for in subsection (a)" into the language of subsection (b), thus saying that consecutive sentences may not be imposed unless the court finds they are required to protect the public, *except* where they have been made mandatory in subsection (a). Thus, it is our opinion that the legislature did not intend to convert subsection (b) from a *limitation* on consecutive sentences to an *alternative means* of imposing consecutive sentences.

At the sentencing hearing, the trial judge stated:

> "The court does specifically find that the provisions of section 1005—8—4(b) [*sic*], I think that it applies in this case and the court incorporates the arguments of the State in this sentencing hearing as the court's findings in that regard ***."

The State's argument had seemed to indicate that section 5—8—4(b) was an exception to the language of section 5—8—4(a) and that section 5—8—4(b) could be used even where 5—8—4(a) ruled out consecutive sentences.

To the extent that the trial court's sentence reflects an opinion that section 5—8—4(b) could be used to impose a consecutive sentence where barred by section 5—8—4(a), we believe the court was in error. We are of the opinion that if consecutive sentences are barred by section 5—8—4(a), then they cannot be imposed under section 5—8—4(b).

However, we are further of the opinion that the offenses of which the defendant was convicted in this case were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. We are of the opinion

that the imposition of consecutive sentences was appropriate under section 5—8—4(a).

Section 5—8—4(a) was passed to eliminate the prejudicial effect of double punishment for multiple offenses that were motivated by the same criminal objective. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) In deciding whether consecutive sentences are prohibited by the section, we must determine which acts were independently motivated and which were merely part of a course of conduct guided by an overarching criminal objective. *People v. Miller* (1983), 115 Ill. App. 3d 592, 450 N.E.2d 767.

The defendant in *Miller* made two narcotics deliveries on different dates to the same undercover officer at the same location. The court upheld the imposition of consecutive sentences, noting that the second delivery was not motivated by the first, the defendant's conduct and objectives differed in each delivery, and the criminal objective in each was satisfied upon the delivery of the agreed-upon consideration. Similarly, in *People v. Shaw* (1985), 133 Ill. App. 3d 391, 478 N.E.2d 1142, the court found that the defendant's two theft offenses did not constitute a single course of conduct, even though each offense was part of a larger scheme of financial fraud.

█ In the instant case, each of the offenses was committed at different times and under different circumstances. In each instance, the criminal objective was satisfied when the victim turned the proceeds over to the defendant. Consequently, each offense was independently motivated. We therefore find that consecutive sentences were not prohibited under section 5—8—4(a), and that the trial judge could have properly imposed consecutive sentences under section 5—8—4(a).

We have reviewed the record in this case and find that the sentences imposed were not prohibited under section 5—8—4(a). Having so found, we also find that the trial judge's finding that consecutive sentences were warranted under section 5—8—4(b) is also proper.

Under Supreme Court Rule 615(a), "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." (134 Ill. 2d R. 615(a).) As we have stated above, we believe the trial judge's view of section 5—8—4(b) as an exception to 5—8—4(a) was erroneous. However, because, in our view, consecutive sentences were proper under section 5—8—4(a), and thus the trial judge's finding under section 5—8—4(b) is also correct, we find any error resulting from the trial judge's interpretation of the statute to be harmless. We exercise our power under Supreme Court Rule 615 (b)(1) (134 Ill. 2d R. 615(b)(1)) to affirm the sentence based on our finding that consecutive sentences were not barred by section 5—8—4(a) and the

trial judge's finding that the consecutive sentences were necessary under section 5—8—4(b).

The judgment of the circuit court of Whiteside County is affirmed.

Affirmed.

GORMAN and SLATER, JJ., concur.