THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALFRED ANTOINE PORTER, Defendant-Appellant.

First District (3rd Division)   No. 1—94—0513

Opinion filed December 27, 1995.

Loraine A. Ray and Erika B. Cunliffe, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Following a bench trial, defendant, Alfred Antoine Porter, was convicted of first-degree murder in violation of section 9—1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/9—1(a)(1) (West 1992)) and four counts of attempted first-degree murder in violation of sections 8—4 and 9—1 of the Criminal Code of 1961 (720 ILCS 5/8—4, 9—1 (West 1992)) and sentenced to a 50-year prison term for the first-degree murder and to four consecutive 10-year terms for each of the attempted first-degree murder counts, for a total of 90 years. It is from the judgment of conviction that defendant now appeals to this court pursuant to section 6 of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Supreme Court Rule 603 (134 Ill. 2d R. 603).

For the reasons which follow, we affirm the judgment of the circuit court as modified herein.

## FACTUAL BACKGROUND

Defendant's convictions arose from a gang-related shooting that occurred at 8:15 p.m. on October 5, 1992, at the intersection of Leavitt Street and Diversey Avenue in Chicago. David Ramos testified that

he and four other members of the Latin Kings street gang, Jerry Davey, Jose M. Colon (hereinafter Jose M.), Jose A. Colon (hereinafter Jose A.) and Ramon Figueroa, were riding in a Chevrolet Blazer when they noticed a group of men standing on the corner. Jose M. rolled down the front passenger window and said, "[W]hat's up?" Defendant, who was standing in the group, told the man next to him to "get the shit." The man reached into a car, pulled out a gun and fired two or three shots into the Blazer, striking the driver and causing the vehicle to crash into a dumpster. Ramos testified that the firing stopped for a few seconds, after which several additional shots were fired into the Blazer. Ramos was ducking under the seat at the time and did not see who fired the additional shots. Jose M. was killed by the gunfire, and Davey and Jose A. were wounded. Ramos and Figueroa were not injured.

The following day, Ramos identified defendant's picture in a photographic array and subsequently picked him out of a lineup. Ramos testified that he had seen defendant in the neighborhood with his girl friend and knew him as "Antoine." However, at the time Ramos first spoke to the police, he mistakenly believed defendant's nickname was "Hodgey." Ramos stated that defendant was about 20 feet from the car when the shooting occurred and that the area was well-lighted.

Jose A. testified that he recognized the group of men on the corner as members of the Mickey Cobras street gang. Like Ramos, Jose A. identified defendant as the man who said "get the shit" to the man next to him. However, Jose A. also testified that after the unidentified man fired the first shots, Jose A. looked up and saw defendant with the gun. Jose A. saw defendant fire a shot into the Blazer, then ducked down and heard approximately 10 more shots. Jose A. testified that he did not know how old defendant was or what he was wearing, but that he recognized him as the boyfriend of Demetrice Williams. Jose A. identified defendant from a photographic array and in a lineup, but initially thought defendant's nickname was "Hodgey." He stated that "Hodgey" was in fact the nickname of a person who associated with defendant. According to Jose A., defendant and "Hodgey" did not look alike. Jose A. testified that he was a convicted felon and was awaiting trial on an attempted murder charge.

Davey, the driver of the Blazer, testified that after defendant said "get the shit," another man fired shots into the car which hit Davey in the arm and caused him to crash the vehicle into a dumpster. He then heard several more shots, but could not see who was firing. Although Davey did not give a physical description of defendant, he

identified him in a photographic array and a lineup and told the police that his name was Antoine. He knew defendant as Williams' boyfriend and told the police to look for him at her house. Davey previously had been convicted of felonies and at the time of trial was awaiting sentencing for delivery of a controlled substance.

Figueroa testified that after the initial shots were fired, he looked up and saw defendant holding the gun and shooting into the Blazer. Figueroa was not wounded and subsequently identified defendant from a photographic array and in a lineup. He testified that he believed defendant's nickname was "Hoggie" and gave that name to the police.

Officer Paul Bretz of the Chicago police department testified that Davey told him that the men on the street corner were members of the Vice Lords street gang rather than the Mickey Cobras gang.

Defendant presented the testimony of three acquaintances who stated that although they saw him at the crime scene, he was not the man who said "get the shit" and was not involved in the shooting. Joseph Myles testified that the men in the Blazer wore hoods over their heads and that the person in the front passenger seat fired into the crowd. An unidentified man in the crowd then produced an automatic weapon and fired shots into the vehicle. Quinton Jones corroborated Myles' testimony in part, but did not mention a shot being fired from the Blazer. Faye Wallace, a resident of the neighborhood, testified that she saw two men firing into the Blazer and that neither was defendant.

At the sentencing hearing, defense counsel argued in mitigation that defendant, who was 19 years old at the time of the shooting, had no prior convictions, had obtained his high school equivalency degree and was employed. Defendant was the father of three young children and had been studying to become a fire fighter. The State argued that the serious nature of defendant's conduct warranted a lengthy term of imprisonment. In imposing sentence, the trial court emphasized the nature of the offense, the need to protect society and the need to deter others from committing similar crimes. Defendant was sentenced to consecutive prison terms totaling 90 years.

## ISSUES PRESENTED FOR REVIEW

On appeal, defendant contends that: (1) the sentences imposed on him were illegal and excessive; and (2) he was not proved guilty beyond a reasonable doubt.

## OPINION

Defendant first contends that the trial court exceeded its statu-

tory authority in ordering that all five sentences be served consecutively.

■ Section 5—8—4(a) of the Unified Code of Corrections provides as follows:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, *** in which event the court shall enter sentences to run consecutively." 730 ILCS 5/5—8—4(a) (West 1992).

Initially, we note that the State seeks to justify the consecutive sentences on the basis of section 5—8—4(b), which allows the trial court to impose consecutive sentences where it finds that such a term is required to protect the public from further criminal conduct by a defendant. (730 ILCS 5/5—8—4(b) (West 1992).) This subsection has been interpreted as applying only where the multiple convictions do not arise out of a single course of conduct. (*People v. Cooper* (1992), 239 Ill. App. 3d 336, 360, 606 N.E.2d 705.) Where, as here, the convictions arise out of a single course of conduct during which there was no substantial change in the criminal objective, the trial court's authority to impose consecutive rather than concurrent sentences is determined by section 5—8—4(a) of the Unified Code of Corrections. 730 ILCS 5/5—8—4(a) (West 1992).

■ Defendant makes two arguments based on section 5—8—4(a). First, he contends that because severe bodily injury is inherent in the offense of first-degree murder, using his conduct in committing that offense to support consecutive sentences results in double enhancement. Defendant cites *People v. Miller* (1989), 193 Ill. App. 3d 918, 552 N.E.2d 988, as support for this contention. There, the *Miller* court held that the defendant's sentences on two convictions for voluntary manslaughter could not be ordered to run consecutively. The court reasoned that, even though both offenses were Class 1 felonies, the element of severe bodily injury was inherent in the offense of voluntary manslaughter and could not be used to further enhance the penalty through the consecutive sentencing provision. (*Miller*, 193 Ill. App. 3d at 930.) Although defendant correctly asserts that *Miller* has not been overruled or disapproved on this point, other cases have reached contrary results.

For example, in *People v. Magnus* (1994), 262 Ill. App. 3d 362, 372, 633 N.E.2d 869, the court stated that consecutive sentences for first-degree murder and second-degree murder were mandated by sec-

tion 5—8—4(a) because second-degree murder is a Class 1 felony and the defendant inflicted severe bodily injury by murdering a second victim.

In *People v. Buford* (1988), 178 Ill. App. 3d 329, 338, 533 N.E.2d 472, the court stated that consecutive sentences for armed robbery and murder were proper because armed robbery was a Class X offense and the defendant inflicted severe bodily injury by murdering one of the victims. The reasoning employed in *Buford* was cited with approval by our supreme court in *People v. Bole* (1993), 155 Ill. 2d 188, 196, 613 N.E.2d 740. We are not persuaded by defendant's argument that his conviction for first-degree murder was not subject to consecutive sentencing under section 5—8—4(a).

■ Defendant's next argument with respect to consecutive sentencing is that his 10-year sentences for the attempted first-degree murders of Ramos and Figueroa should have been concurrent rather than consecutive because neither man was injured in the shooting. He argues that section 5—8—4(a) is ambiguous as to whether, once the "triggering" elements are present, all of the sentences must run consecutively or only those which involve the element of severe bodily harm. Defendant maintains that the rule of lenity should be applied to adopt the interpretation that only those offenses involving severe bodily injury are subject to consecutive sentences.

The interpretation advanced by defendant has been adopted by this court in two recent cases. (See *People v. Ivey* (1994), 267 Ill. App. 3d 310, 312-13, 642 N.E.2d 157; *People v. Williams* (1994), 263 Ill. App. 3d 1098, 1108-09, 638 N.E.2d 207.) We agree with the reasoning expressed in *Ivey* and *Williams* and find that the trial court erred in ordering defendant's sentences for attempted first-degree murder with respect to Ramos and Figueroa to be served consecutively to the other sentences. Pursuant to Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we modify defendant's sentences so that the 10-year terms for the attempted first-degree murders of Ramos and Figueroa are concurrent with the consecutive terms of 50 years for first-degree murder, 10 years for the attempted first-degree murder of Davey and 10 years for the attempted first-degree murder of Jose A. This results in a reduction of the aggregate sentence from 90 years to 70 years.

■ Defendant next challenges the length of his sentences, claiming that it was excessive in light of the substantial factors in mitigation. We find this argument to be without merit.

The 1970 Illinois Constitution mandates that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, § 11.) Pursuant to Supreme Court Rule 615(b)(4)

(134 Ill. 2d R. 615(b)(4)), the appellate court has the power to reduce sentences. The basic issue on review is whether the trial court abused its discretion in imposing the particular sentence. (*People v. Perruquet* (1977), 68 Ill. 2d 149.) An abuse of discretion can be found in a sentence that is within the statutory limitations if that sentence is greatly at variance with the purpose and spirit of the law. *People v. Steffens* (1985), 131 Ill. App. 3d 141; see also *People v. Gibbs* (1977), 49 Ill. App. 3d 644.

In the case *sub judice*, the record clearly demonstrates that the trial court considered all of the relevant factors, including defendant's lack of prior convictions, and determined that the nature and seriousness of the offenses warranted a 50-year term for first-degree murder and 10-year terms for each conviction of attempted first-degree murder. Accordingly, we find no abuse of discretion. *People v. Cox* (1980), 82 Ill. 2d 268, 279-80, 412 N.E.2d 541; *People v. Smith* (1994), 258 Ill. App. 3d 1003, 1028-29, 630 N.E.2d 1068.

■ Still to be considered is defendant's contention that he was not proved guilty beyond a reasonable doubt as the identification testimony of the four victims was insufficient and the defense witnesses were more credible.

In determining whether the evidence is sufficient to support a conviction, the relevant question for this court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the elements of the offense had been established beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) The credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from the evidence are matters to be resolved by the trier of fact. (*People v. Furby* (1990), 138 Ill. 2d 434, 455, 563 N.E.2d 421.) Discrepancies or conflicts in the testimony affect only the weight to be given the witness' testimony, and the trier of fact is free to accept or reject as much or as little as it sees fit of a witness' testimony. *People v. Harris* (1991), 220 Ill. App. 3d 848, 863, 580 N.E.2d 1342.

In the instant case, four of the victims made positive identifications of defendant, with whom they were acquainted. The trial judge had the opportunity to observe the demeanor of the witnesses and apparently resolved any questions of credibility in favor of the State. Without repeating the facts summarized at length *supra*, we find that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

In light of the foregoing, defendant's convictions are affirmed and his sentences are affirmed as modified.

Judgment affirmed as modified.

RIZZI and CERDA, JJ., concur.