THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD L. KAGAN, Defendant-Appellant.

Second District   No. 2—95—0177

Opinion filed August 28, 1996.

Sherman C. Magidson and John L. Sullivan, both of Magidson & Sullivan, of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Richard L. Kagan, appeals from the judgment of the circuit court of Lake County which found him guilty of solicitation of murder for hire (720 ILCS 5/8—1.2(a) (West 1992)) and attempted first-degree murder (720 ILCS 5/9—1(a)(1) (West 1992)); and from his sentence of consecutive terms of 30 years' imprisonment for solicitation to commit murder for hire and 12 years' imprisonment for attempted first-degree murder. We affirm as modified.

Defendant raises two issues on appeal: (1) whether the trial court abused its discretion in denying his motion for a continuance of the trial date due to his physical condition; and (2) whether the trial court erred in sentencing defendant to consecutive sentences. We will discuss only those facts necessary for an understanding of the issues.

In April 1994, defendant was accused of paying $10,000 to Ronald Petkus, a reputed enforcer for the Hell's Henchmen motorcycle gang, to murder his wife, Margaret Kagan. Defendant and Margaret were engaged in a bitter divorce dispute at the time. Defendant was a criminal defense attorney who had previously represented Petkus. While Margaret was in Chicago meeting with defendant and his attorney with regard to their divorce, Petkus and Cragin, another Hell's Henchman, planted a bomb under Margaret's car at the Fort Sheridan Metra train station. When Margaret returned and started her car, the bomb exploded, setting the car afire. Margaret escaped from the burning car with only minor injuries. Defendant was arrested on April 28, 1994.

On July 21, 1994, the case proceeded to trial and the jury returned a guilty verdict against defendant. The trial court found that because of the danger that defendant posed to the community, and in particular to Margaret, the sentences were necessary to protect her and to protect the public from him. Thereafter, defendant

was sentenced to consecutive terms of imprisonment of 30 years for solicitation of murder for hire and 12 years for attempted first-degree murder. Defendant timely appeals. We granted defendant's motion to file his reply brief *instanter*.

We now turn to defendant's first argument on appeal. He contends that the trial court denied him a fair trial when it refused to grant a continuance for trial because defendant's physical condition prevented him from assisting in the preparation of his defense before trial. The State responds that defendant is estopped from arguing that his physical health problems precluded him from assisting in his defense because he refused the State's offer of a furlough to attend to his medical needs. The State also argues that the evidence presented at trial refutes defendant's contention that he was physically unable to assist his attorney in his defense.

The record reflects that defendant filed several motions prior to trial. On May 13, 1994, defendant filed a motion to reduce bond. He stated that he had scheduled heart surgery prior to his arrest to remedy a cardiovascular condition and that, without the prescribed immediate surgery, death could result. Defendant argued that because of this medical condition he was unable to participate or assist in the preparation of his defense. Defendant alleged that, when he met with trial counsel to prepare for trial, the meeting had to be discontinued because the stress of the discussions brought on a seizure.

At the hearing on the motion to reduce bond, the State offered to agree to a request for a medical furlough. However, defense counsel declined the State's offer and stated that defendant was there to reduce bond. The court stated that "on the face of it," a furlough for an operation would be the solution to defendant's problem and, if defendant wanted to reduce the bond on other grounds, the court would hear testimony.

Defendant then testified that he suffered a ruptured aneurysm in his carotid artery in 1988 and also was diagnosed with angina pectoris. He stated that a special surgery at a medical center in Phoenix, Arizona, was necessary to remove blockage which was found in two of his arteries.

The trial court denied the reduction for bond "without prejudice to there being a possible furlough if that is justified on the basis of either a hearing that would indicate that there is some immediate necessity for [defendant] to have this operation or there being an agreement." Defendant never arranged a meeting to have his doctors contact the State's Attorney so that arrangements could be made for a furlough, as suggested by the State.

On June 1, 1994, defendant filed two more motions: a motion to

expand bond and a motion for continuance. In defendant's motion to expand bond, he asked the court to allow him to travel to Arizona for the special cardiovascular surgery which he needed due to his deteriorating condition. Defendant argued that without surgery he had been and would continue to be unable to assist in the preparation of his trial. In defendant's motion for continuance he again argued that his physical health prevented him from assisting in the preparation of his defense.

On the date of oral argument on the motions, defendant appeared *pro se* due to the unavailability of counsel and requested to defer the motion for continuance until his counsel was present and to argue on the motion to expand bond himself. The court declined to hear the motions "piecemeal" without counsel and continued the motions to June 10. On June 10, defense counsel remained unavailable and defendant again appeared *pro se*.

The motion to expand bond to travel to Arizona for the cardiovascular treatment was finally heard on June 16. Defendant testified about the specific recommended procedure needed to correct his medical problem. He testified that, although Washington, D.C., and Chicago had facilities which could perform this special surgery, the medical center in Arizona had the most experience performing the procedure. Defendant stated that he was unable to assist his attorney in the preparation of his defense because he was directed by the treating physician not to participate in courtroom activities. Defendant suffered from significant chest pain, fatigue, and dizziness. During one conference with counsel, defendant testified that he collapsed and had to be assisted by deputy sheriffs. During cross-examination, defendant admitted that he worked approximately 12 hours a week handling discovery, reading, and giving directions to other lawyers in his law firm. In addition, he testified that his divorce was still pending and he personally appeared at the divorce proceedings. The trial court was not convinced that there was any medical emergency. In addition, it also considered defendant to be a flight risk and, thus, denied the motion to expand bond.

The motion for continuance was heard on July 6. Defense counsel was not prepared to address the motion. In response to the trial court's inquiry if she wished to add to the motion, counsel stated that defendant was no longer a good candidate for the procedure which was to be performed in Arizona and that bypass surgery was now needed because of defendant's kidney condition. The trial court responded:

> "There is no testimony from anyone that that degree of blockage is something that requires immediate surgery. As a matter of

fact, I have been seeing [defendant] regularly in court; I don't know that there is any emergency, and until one has been demonstrated, I would not grant a motion for continuance, and as I stated before and I will state again, it is my order that [defendant] not have any elective surgery prior to the date of trial unless he first is granted permission by the Court, so I am denying the motion."

Again, on July 14, another motion for continuance was filed. This continuance was based on a determination of defendant's mental competency under section 114—4 of the Code of Criminal Procedure of 1963. 725 ILCS 5/114—4 (West 1992). At the hearing on the motion, defense counsel argued that the trial court should order a determination of defendant's mental competency to stand trial because the stress of a trial exacerbated his medical condition to the point that it prevented defendant from cooperating with counsel.

Defendant's internist testified that defendant needed to be treated with medicine rather than surgery. In his opinion, the rigors of a trial would continue to aggravate defendant's symptoms. The trial court found defense counsel's argument to be disingenuous because defendant had been in court a number of times in connection with all the motions and appeared alert, in touch with reality, and very competent when he addressed the court. The court did not find any evidence as to defendant's inability to cooperate with counsel due to an emotional defect or inability to understand the nature of the proceedings. The court found nothing in the evidence to raise any questions as to defendant's mental or emotional ability to cooperate with counsel. Moreover, the court found that there was no evidence presented as to defendant's physical ability to stand trial.

Defendant filed one last motion for a continuance on the day trial began in which he argued that his physical health precluded him from assisting in his defense. However, this particular issue was not argued at the hearing on the motion.

■ Section 114—4 enumerates the grounds for a continuance in criminal proceedings. 725 ILCS 5/114—4 (West 1992). Section 114—4(b)(4) provides that a continuance is proper where the defendant cannot stand trial because of physical or mental incompetency. 725 ILCS 5/114—4(b)(4) (West 1992). Subsection (i) allows the court to hold a hearing for the purpose of determining if the defendant is physically able to appear in court or assist in his defense. 725 ILCS 5/114—4(i) (West 1992). All motions for continuance are addressed to the discretion of the trial court. 725 ILCS 5/114—4(e) (West 1992); *People v. Tyler*, 128 Ill. App. 3d 1080, 1097 (1984). Before a reviewing court finds that a trial court abused its discretion in denying a con-

tinuance, it must appear, in some manner, that the court's refusal hindered the accused in his defense and thereby prejudiced his rights. *People v. La Fiura*, 92 Ill. App. 3d 714, 720 (1981).

■ We have searched the record and fail to find how defendant was prevented from presenting an adequate defense or how his rights have been prejudiced by the denial of a continuance due to defendant's physical condition. Defendant presents us with numerous occasions in which he complained that his medical condition prevented him from assisting in the preparation of his defense but fails to submit, with any particularity, how denial of a continuance prejudiced him. The sole example presented by defendant is his argument that due to defendant's inability to assist counsel, his counsel was unaware of a "key impeachment witness *** only two weeks before trial," which thus left defense counsel "less than adequately prepared." However, our review of the record indicates that defendant argued this in his motion to produce and the trial court found the motion improper because defendant did not attach an affidavit identifying the witness and explaining why the witness was unavailable. Moreover, defendant never renewed this motion.

Defendant argues that the trial court should have suspended the proceedings to hold a hearing to determine defendant's competency and ability to cooperate with counsel. Defendant equates his case to the case of *People v. Burson*, 11 Ill. 2d 360 (1957), in that it established a standard for determining questions of a defendant's competence and ability to assist in the preparation of his defense for trial.

In *Burson*, the defendant had exhibited irrational conduct during trial so that it became apparent, as the trial progressed, that he was incapable of cooperating with his counsel. *Burson* held that a hearing should be conducted when facts become evident which raise a *bona fide* doubt of the defendant's sanity. *Burson*, 11 Ill. 2d at 369-70. The court held that, once a doubt of the defendant's sanity is raised, the issue should be settled regardless of whether it is before, during, or after trial. *Burson*, 11 Ill. 2d at 370. The court reasoned that this is so because, if the defendant is tried while insane, his insanity could prevent him from cooperating with counsel in making a rational defense, thereby violating his due process rights. *Burson*, 11 Ill. 2d at 368-70.

In the present case, there is no evidence that raised a *bona fide* doubt that defendant was incapable of cooperating with his counsel. The trial court observed defendant in court with counsel, *pro se*, and during his testimony and found defendant to be capable of understanding, cooperating, and assisting his counsel.

Moreover, we fail to see how defendant could continue to argue

that he could not assist with his trial preparation because of his medical problems when he was given the opportunity to correct the problems. See *People v. Neal*, 142 Ill. 2d 140, 151-52 (1990). Twice the trial court offered to grant defendant a furlough so that he could receive the medical treatment defendant deemed necessary. If defendant had obtained a furlough, then he might have significantly reduced his health problems, which allegedly would have enabled him to assist in the preparation of his defense. That defendant's health problems "did not lessen" is not the fault of the trial court. We will not allow a party to take advantage of his own failure to act, either intentionally or inadvertently, and grant a reversal, where he was given the opportunity to prevent or correct the problem. After a thorough examination of the record, we conclude that the trial court did not abuse its discretion, and, therefore, we find that the trial court properly denied defendant's motions for a continuance.

We now turn to defendant's second contention, in which he asserts that it was error for the trial court to impose consecutive sentences because the solicitation and the attempted first-degree murder constituted a single course of conduct during which there was no substantial change in the nature of the criminal objective. Defendant bases his claim on section 5—8—4(a) of the Unified Code of Corrections. 730 ILCS 5/5—8—4(a) (West 1992).

The State maintains first that section 5—8—4(b) sets forth an exception to section 5—8—4(a) if the court makes a finding that consecutive sentences are necessary for the protection of the public, as the trial court did in this case, and second that defendant's convictions did not constitute a single course of conduct. Our disposition of defendant's issue turns on whether defendant's convictions, in fact, constituted a single course of conduct, and, therefore, we will examine this question first.

■ The relevant portion of section 5—8—4 provides:

"(a) When multiple sentences of imprisonment are imposed on a defendant at the same time, *** the sentences shall run concurrently or consecutively as determined by the court. *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12—13 or 12—14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively. Sentences shall run concurrently unless otherwise specified by the court.

(b) The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." 730 ILCS 5/5—8—4(a), (b) (West 1992).

The State maintains that, because the *actus reus* of solicitation is separate and distinct from attempted first-degree murder, there is no "single course of conduct." Specifically, the State maintains that, because defendant's intent changed from finding someone to kill his wife to actually aiding and abetting Petkus to kill his wife, the acts are separate. The State further argues that the motivation of solicitation of murder for hire is to find someone to kill another, whereas the motivation underlying attempted first-degree murder is the actual intent to murder another. The State requests that we follow *People v. Martinez*, 264 Ill. App. 3d 807 (1994).

We find the State's reliance on *Martinez* misplaced. The issue in *Martinez* concerned whether the trial court's entry of judgment of the convictions and consecutive sentences for the offenses of attempted first-degree murder and solicitation of murder for hire was error where both offenses were predicated solely on a single act of solicitation. *Martinez*, 264 Ill. App. 3d at 815. The court did not analyze whether there was a "single course of conduct" within the meaning of subsection (a). When the court did address whether the consecutive sentences were proper, it found that consecutive sentences were mandated by statute because defendant's conduct for attempted first-degree murder was a Class X felony and severe bodily harm was inflicted upon the victim. *Martinez*, 264 Ill. App. 3d at 816.

In determining whether the defendant's actions constituted a single course of conduct, we must examine which acts were independently motivated and which were part of a course of conduct guided by an "overarching criminal objective." *People v. Fritz*, 225 Ill. App. 3d 624, 629 (1992). A finding of independent criminal motivation must be supported by the record. *People v. Morris*, 237 Ill. App. 3d 140, 147 (1992). Consecutive sentences are to be imposed sparingly and may be modified if the record does not support such a decision. *People v. Coleman*, 166 Ill. 2d 247, 257-58 (1995).

Section 2—4 of the Criminal Code of 1961 defines the term "conduct" as "an act or a series of acts, and the accompanying mental state." 720 ILCS 5/2—4 (West 1992). "Course of conduct" includes a range of activity not necessarily confined to a single incident. *People v. Bole*, 155 Ill. 2d 188, 193 (1993).

■ Defendant's acts of solicitation of murder for hire and attempted first-degree murder were part of a common scheme characterized by the same motivation: to murder defendant's wife, Margaret. Contrary to the State's contention that defendant manifested a change in criminal intent, we find that defendant's criminal motivation remained unchanged from the outset of the first meeting with Petkus, through the telephone conversations between defendant and Petkus where defendant supplied Petkus with information of Margaret's whereabouts, and through Petkus' attempt to kill Margaret. Accordingly, we determine that the imposition of consecutive sentences was improper because there is no evidence to support a finding that the solicitation of murder for hire was motivated by a criminal objective that differed from the motivation to commit attempted first-degree murder.

■ Having found that the offenses were committed as part of a single course of conduct, we find that section 5—8—4(a) mandates that the trial court shall not impose consecutive sentences. We must next consider the State's claim that consecutive sentences can be imposed under section 5—8—4(b) independently from section 5—8—4(a) if the trial court "is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant." 730 ILCS 5/5—8—4(b) (West 1992).

In support of its contention, the State points to the first district case, *People v. Porter*, 277 Ill. App. 3d 194 (1995). In *Porter*, the defendant was sentenced to a 50-year prison term for first-degree murder and four consecutive 10-year terms for each of four counts of attempted first-degree murder, totaling 90 years' imprisonment. The convictions arose from a gang-related shooting. The defendant first argued that the sentences imposed were illegal and excessive. *Porter*, 277 Ill. App. 3d at 197. The State sought to justify the consecutive sentences on the basis of subsection (b). *Porter*, 277 Ill. App. 3d at 198. The first district concluded that subsection (a) controlled because all of the convictions arose during a single course of conduct. *Porter*, 277 Ill. App. 3d at 198. The court found, however, that, although all of the convictions arose out of a single course of conduct, two of the 10-year sentences for attempted first-degree murder should be concurrent because neither victim was injured in the shooting. *Porter*, 277 Ill. App. 3d at 199. *Porter* did not hold that sentences can be imposed under subsection (b) independently from subsection (a), and we fail to understand how this case advances the State's claim. For the same reason, we decline to follow *People v. Williams*, 263 Ill. App. 3d 1098 (1st Dist. 1994).

The interpretation of the statute advanced by defendant has been

adopted by two districts of the appellate court. *People v. Cooper*, 239 Ill. App. 3d 336 (5th Dist. 1992); *People v. Fritz*, 225 Ill. App. 3d 624 (3d Dist. 1992). In *Cooper*, there was no argument that the offenses of which the defendant was convicted arose from a "single course of conduct" and that the specified exceptions under subsection (a) were clearly not applicable. *Cooper*, 239 Ill. App. 3d at 357. The issue presented to the court then was whether subsection (b) allowed consecutive sentences for multiple convictions arising from a single course of conduct when the trial court determined that such sentences were necessary to protect the public from further criminal conduct by the defendant despite the language of subsection (a) prohibiting consecutive sentences for such convictions. *Cooper*, 239 Ill. App. 3d at 358.

The court found that subsection (a) makes consecutive sentences mandatory in those instances specified, as in the case of a Class X felony accompanied by the infliction of severe bodily injury. Other than in those certain instances, subsection (a) prohibits consecutive sentences where the offenses were committed as part of a single course of conduct. *Cooper*, 239 Ill. App. 3d at 359; see *People v. Wittenmyer*, 151 Ill. 2d 175, 194-97 (1992) (circumstances in which consecutive sentences are mandatory are exceptions to the general rule prohibiting such sentences when the offenses are committed as part of a single course of conduct). The court held that, in all other circumstances, the imposition of consecutive sentences is within the sentencing court's discretion subject to its finding that consecutive sentences are required to protect the public from further criminal conduct by the defendant. *Cooper*, 239 Ill. App. 3d at 359. The court reviewed the legislative history of the provisions and concluded that subsection (b) does not provide another basis to impose consecutive sentences when the multiple conviction arose out of a single course of conduct; rather, it limits the discretion of the sentencing court in those circumstances where the court has discretion. *Cooper*, 239 Ill. App. 3d at 358-61.

The defendant in *Fritz* was convicted of seven counts of theft of over $300 and sentenced by the trial court to consecutive terms in order to protect the public from further criminal conduct under subsection (b). As in the present case, the defendant argued that consecutive terms were prohibited under subsection (a) because his offenses arose from a single course of conduct. The State argued that subsection (b) sets forth the exception to subsection (a). *Fritz*, 225 Ill. App. 3d at 627.

The *Fritz* court reviewed the legislative history of the provisions and held that the legislature did not intend to convert subsection (b) from a limitation on consecutive sentences to an alternative means

of imposing consecutive sentences. *Fritz*, 225 Ill. App. 3d at 627-28. The legislature amended subsection (a) in 1988 by adding criminal sexual assault and aggravated criminal sexual assault to those crimes which are punishable by consecutive sentences even though they were committed as part of a single course of conduct. The legislature also changed "may" to "shall." This indicated to the *Fritz* court that, when these specified crimes are committed, consecutive sentences are mandatory even though as part of a single course of conduct. *Fritz*, 225 Ill. App. 3d at 628. Prior to the amendment, subsection (b) provided that a court *shall not* impose a consecutive sentence in any case unless it was the court's opinion that the sentence was required to protect the public. After subsection (a) was amended, if consecutive sentences were mandatory in certain cases, the court surmised that it was senseless to forbid consecutive sentences in the absence of the special finding in subsection (b). *Fritz*, 225 Ill. App. 3d at 628. By inserting the phrase "except as provided for in subsection (a)" into the language of subsection (b), the legislature thus intends that consecutive sentences may not be imposed unless the court finds they are required to protect the public, except where they have been made mandatory in subsection (a). *Fritz*, 225 Ill. App. 3d at 628.

We are persuaded by the reasoning expressed by *Fritz* and *Cooper*. We find the reasoning more persuasive given the general prohibition against consecutive sentences for offenses committed in a single course of conduct (*Bole*, 155 Ill. 2d at 197), and the general policy of lenity regarding the interpretation of criminal statutes (*People v. Haron*, 85 Ill. 2d 261, 277-78 (1981)).

■ Therefore, we find that the trial court erred in imposing consecutive sentences of imprisonment upon defendant. By the power granted us under Supreme Court Rule 615(b), we affirm the judgment and modify defendant's sentences of imprisonment from consecutive to concurrent. 134 Ill. 2d R. 615(b).

For the reasons stated above, we affirm the judgment of the circuit court of Lake County and modify the sentence of imprisonment.

Affirmed as modified.

BOWMAN and RATHJE, JJ., concur.