No. 3--05--0272

_____

filed November 17, 2006.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--511 |
| DANIEL LEE ROHLFS, | ) ) | Honorable J. Peter Ault, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the opinion of the court:
_____

Following a jury trial, defendant Daniel Lee Rohlfs was convicted of Class 3 felony theft by deception (720 ILCS 5/16--1(a)(2) (West 2002)). Defendant appeals, contending that the trial court erred in (1) denying his pretrial request to proceed pro se; (2) allowing the State to introduce at trial an evidence deposition taken outside defendant's personal presence; (3) admitting evidence of readouts of two caller-ID devices; and (4) failing to conduct an inquiry into defendant's pro se posttrial claims of ineffective assistance of trial counsel. We remand for further proceedings.

FACTS

On July 1, 2003, defendant was a resident of the Tazewell

County jail on charges unrelated to the offense in this case. On that date, 72-year-old Jean Moser received a collect telephone call from the Tazewell County jail. The caller addressed Jean as "Aunt Jean" and identified himself as "Steve." He told Jean he needed $3,000, because his car had been repossessed. Jean, who was not an attorney and had a nephew named Steve Sumner, told the caller that she did not have $3,000. The caller asked for phone numbers of "Aunt Lois" and "Aunt Marilyn." Jean's sisters' names were Lois and Marilyn. Assuming that the caller must be her nephew, Jean gave him telephone numbers for Lois and Marilyn.

Jean's husband, Keith Moser, accepted a collect call from the Tazewell County jail on July 2, 2003. The caller identified himself as "Steve," and asked to speak with Jean. Keith informed the caller that Jean was not at home. He immediately knew that the voice was not that of Jean's nephew, Steve Sumner. When Keith told Jean about the call, she telephoned the Tazewell County jail to ascertain if her nephew was there. She learned that he was not, so she telephoned the Morton police department to report the calls.

The next day, the Mosers received another call from the Tazewell County jail. Keith informed the caller that Jean was not at home, but would return in an hour. The Mosers then arranged for the Morton police to come to their home to record the conversation if the caller telephoned again. Morton police

2

detective Bill Roth attempted to tape-record the conversation when the Mosers received another call later that afternoon. The caller apologized to Jean for falsely telling her that his car had been impounded. He said he and "Sandy" had had marital problems resulting in his being jailed, and he needed $700 for bail. The caller said if she would go to the bank and take out $700 in cash, he would have someone come to the house to pick it up. He said another lady would mail her a check to cover the $700.

Meanwhile, on the morning of July 3, 2003, 84-year-old Ruth Livengood received a collect telephone call from the Tazewell County jail. Ruth asked who was on the line, and the caller said, "You mean you don't recognize your grandson?" Ruth's only adult grandson was Don J. Livengood, so she assumed it was he. The caller said he had fallen behind on car payments, and he needed $700 to get the car back. He told Ruth to send a check in an envelope addressed to his attorney, Jean Moser, in care of Steve Sumner. Ruth complied by immediately writing out the check and having her housekeeper deliver it to the post office.

When Jean received the check from Ruth on July 5, 2003, she immediately turned it over to the Morton police. The police, in turn, informed Ruth that she had been the victim of a scam and assured her that her check had not been cashed; it was in the possession of the police.

After charges were filed against defendant and counsel was appointed for him, defendant filed numerous pro se motions. The court admonished defendant to proceed through counsel. Defendant, however, persisted in filing pro se pleadings and ignored the court's cautionary admonishment to speak only through his attorney. Ultimately, defendant's attorney, Mark Wertz, sought a fitness examination, claiming that there was a bona fide doubt as to defendant's fitness to stand trial. The court granted the motion, and, on July 24, 2004, a jury found defendant unfit to stand trial. He was committed to the Department of Human Services (DHS) for treatment. On December 27, 2004, DHS issued a report indicating that defendant's fitness was restored with medication. On January 19, 2005, the trial court determined that defendant was fit to stand trial, and the prosecution resumed. The court set the cause for trial to begin February 28, 2005.

On February 1, 2005, defendant moved for substitution of counsel. He claimed that attorney Wertz had refused to give him a copy of all of the prosecution's discovery and he could not work with Wertz. On February 15, 2005, the court denied defendant's motion and admonished defendant that, unless he hired other counsel, attorney Wertz would be representing him at trial. The following colloquy ensued:

"THE DEFENDANT: I am--invoke my rights to represent

4

myself then.  I'd like to have all my files.

THE COURT:  That request is denied.  The Court has reviewed what's happened in these cases up until now and quite frankly, I don't think you're in a position where you could adequately represent yourself, and that request is denied at this time."

The prosecutor then requested a continuance of the trial due to the unavailability of Ruth Livengood, who was scheduled for surgery to repair an aneurysm in her heart on February 28, 2005. In the alternative, the prosecutor requested that an evidence deposition be taken to preserve the witness's testimony.  Upon defense counsel's objection to a continuance, the court denied a continuance and granted the State's request for an evidence deposition.

On February 17, defense counsel orally renewed defendant's request to represent himself.  The court took the matter under advisement.

On February 23, 2005, Ruth Livengood's deposition was taken in her home.  Livengood was seated in an easy chair.  She had tubes that attached her to an oxygen tank.  She explained that she had been on oxygen for five years and suffered from high blood pressure that elevated when she was under stress.  Because of Livengood's medical circumstances and the small size of her apartment, arrangements had been made to allow defendant to view

5

and hear the deposition by one-way closed circuit television from a police van parked outside the building where Livengood resided. Defendant and his attorney were provided with cellular telephones by which to communicate during the deposition. At the conclusion of the deposition, police sergeant Jeff Lower stated that, due to the small size of Livengood's apartment, it was not possible to bring defendant physically into the apartment without compromising security.

On February 28, defendant told the court that he wished to proceed to trial with Wertz as his counsel. After the court heard and ruled on several pretrial motions, the trial began on March 1, 2005. Testifying for the State, Jean Moser said that, after the first call from the Tazewell County jail on July 1, 2003, she checked her caller ID to see if the caller phoned her again. Jean said her caller ID device was working properly at the time, because every time a friend would call, that person's telephone number would be displayed on the caller ID. The number on her caller ID device each time "Steve" phoned was 353-9967. Jean also testified that she had a sister, Barbara, who had died in April 2003. Barbara was Steve Sumner's mother, and her obituary listing surviving relatives (including her sisters and Steve Sumner's wife, Sandy) had run in the local newspaper.

Morton police detective Ray Ham testified that he accompanied Detective Roth to the Moser residence on July 3,

2003. Prior to their visit to the Mosers, Ham had arranged with Tazewell County sheriff's detective Darrell Stoecker to monitor calls made by the jail's inmates. On July 3, Stoecker ascertained that defendant was using the jail's telephone from his cellblock during the time when Jean Moser accepted the collect call from the jail that Roth attempted to tape record. Stoecker subsequently had a call made from the same telephone into the jail's administrative office. Stoecker testified that the caller ID device in the administrative office was working properly at the time. The caller ID displayed number 353-9967 when the call from defendant's cellblock came through.

Testifying for the defense, Detective Roth stated that his attempt to record Jean Moser's telephone conversation on July 3, 2003, was unsuccessful. He said the quality of the recording was too poor to discern what the people were saying and he did not preserve the tape. After admonishments, defendant elected not to testify on his own behalf.

Following deliberations, the jury returned its verdict finding defendant guilty of theft by deception, as charged. Defendant subsequently filed a 10-page pro se motion for new trial claiming numerous trial errors and ineffective assistance of trial counsel. Attorney Wertz also filed a motion for new trial. Prior to sentencing, the court denied the motion filed by Wertz without addressing defendant's pro se motion. The court

7

then sentenced defendant to 10 years' imprisonment, and he appeals.

## ISSUES AND ANALYSIS

### 1. Self-Representation

Defendant initially argues that he was improperly denied his constitutional right to represent himself because the trial judge merely believed that defendant was incapable of doing so. Defendant contends that, once he elected self-representation, the court was obligated to admonish him of the perils of self-representation and then grant his request to proceed pro se. We disagree.

As a general rule, a criminal defendant has a constitutional right to represent himself if he makes an unequivocal request to do so. People v. Silagy, 101 Ill. 2d 147, 461 N.E.2d 415 (1984); People v. Leeper, 317 Ill. App. 3d 475, 740 N.E.2d 32 (2000). However, the right of self-representation is not absolute and may be forfeited if the defendant engages in serious and obstructionist misconduct, or if he cannot make a knowing and intelligent waiver of counsel. People v. Ward, 208 Ill. App. 3d 1073, 567 N.E.2d 642 (1991). On review, the trial court's decision on a defendant's election to represent himself will be reversed only if the court abused its discretion. People v. Fritz, 225 Ill. App. 3d 624, 588 N.E.2d 307 (1992).

In this case, the record discloses that defendant engaged in

8

obstructionist conduct by repeatedly filing ill-conceived pretrial pleadings and disregarding the court's admonitions to speak through his attorney. He also equivocated on his request to represent himself. The record shows that, after defendant was found fit to stand trial, he wanted the State's discovery turned over to him, and he argued that attorney Wertz "sabotaged" his case by depriving him of the documents. Defendant requested that the court appoint new counsel for him. When that request was denied, defendant made a last-ditch attempt to obtain the discovery material by announcing that he was invoking his right to represent himself. The court initially denied defendant's oral motion, but later took the matter under advisement at defense counsel's request. Subsequently, upon further inquiry by the court, defendant abandoned his request and admitted that he did not want to present pretrial motions or proceed to trial pro se. See People v. Cain, 171 Ill. App. 3d 468, 525 N.E.2d 1194 (1988).

It is clear from defendant's vacillating positions and his pretrial courtroom behavior that his request for self-representation was not an unequivocal invocation of his right to proceed pro se. Rather, it appears that defendant was merely attempting to undermine his attorney's professional judgment and to obstruct the orderly prosecution of this cause. Accordingly, we cannot say that the trial court abused its discretion in

9

denying defendant's request.

## 2. Ruth Livengood's Evidence Deposition

Next, defendant presents a multi-part argument concerning the taking and admission into evidence of Ruth Livengood's evidence deposition. He contends that (1) his right of self-representation was violated by attorney Wertz's participation in the deposition on defendant's behalf; and (2) accommodations made for defendant's participation at the deposition deprived him of his rights to be personally present at a critical stage of the prosecution and to confront the witness. He also claims that admission of the video-recorded evidence deposition was not harmless error. We review these contentions of error under an abuse-of-discretion standard. People v. Lobdell, 172 Ill. App. 3d 26, 525 N.E.2d 963 (1988); People v. Johnson, 118 Ill. 2d 501, 517 N.E.2d 1070 (1987).

### a. Self-Representation

Defendant contends that the trial court's failure to admonish him pursuant to Supreme Court Rule 401 (134 Ill. 2d R. 401) and to grant his request to proceed pro se deprived him of his constitutional right of self-representation at Ruth Livengood's evidence deposition and rendered the video deposition inadmissible at trial.

As aforesaid, we find no abuse of the trial court's discretion in denying defendant's request to represent himself.

10

Because the record shows that defendant's request was advanced for reasons inimical to the orderly administration of justice, the court did not err in overruling defendant's objection to the video evidence deposition on the ground that it was taken in violation of defendant's right of self-representation.

b.    Defendant's Right to Be Personally Present

and to Confront Witnesses

Defendant also argues that his constitutional rights to be present in person and to confront witnesses against him were impermissibly compromised by conducting Ruth Livengood's evidence deposition while defendant remained outside the witness's presence and was able to view her only by one-way closed circuit television.

A criminal defendant is entitled to appear and defend in person and by counsel at all critical stages of a prosecution; he also enjoys the right to face-to-face confrontation with witnesses against him.  U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8.  However, the defendant's right to appear in person is not a substantial right in itself; rather, it is a means of securing substantial due process rights that may be affected by the proceeding.  People v. Bean, 137 Ill. 2d 65, 560 N.E.2d 258 (1990).  A narrow exception for face-to-face confrontation exists where an individualized showing of necessity is made by the State and adequate arrangements are made to strike

11

a proper balance between the defendant's constitutional right and the necessities of the case. People v. Lofton, 194 Ill. 2d 40, 740 N.E.2d 782 (2000). Accordingly, a defendant's "presence" via closed circuit television is constitutionally acceptable under certain circumstances, unless the defendant's presence has a reasonably substantial relation to the fulness of his opportunity to defend against the charge. Lofton, 194 Ill. 2d 40, 740 N.E.2d 782.

In this case, we cannot say that the conduct of the evidence deposition of Ruth Livengood violated defendant's constitutional rights, even though the deposition was not conducted within defendant's actual physical presence. The witness was of advanced age and physically unable to leave her home without assistance. She suffered from high blood pressure; she had an aneurysm requiring repair; and she was attached by tubes to a supply of oxygen. Moreover, defendant was unwilling to continue the trial to a date after the witness's surgery.

In order to strike a proper balance between defendant's right to confront the witness and the State's need to preserve the witness's testimony despite her fragile medical condition, arrangements were made for defendant to participate in the evidence deposition electronically from a police van parked outside the witness's apartment. Accommodations for defendant's "presence" included the use of one-way closed circuit television

12

and cellular telephones to facilitate contemporaneous communications between defendant and his attorney. The record shows that defense counsel conducted a vigorous cross-examination, and defendant was able to hear the witness and observe her demeanor throughout her testimony. The record also shows that defense counsel conferred with defendant during the deposition both electronically and in person.

We hold that the record adequately demonstrates both that defendant's "presence" by closed circuit television was necessary and that the arrangements made in this case adequately preserved the essence of effective confrontation. See Lofton, 194 Ill. 2d 40, 740 N.E.2d 782. Accordingly, we reject defendant's constitutional challenge to the procedure for obtaining the evidence deposition, as well his claim that the trial court abused its discretion in admitting the video-recorded deposition into evidence at trial.

### 3. Admissibility of Caller ID Readouts

Next, defendant contends that the trial court abused its discretion in admitting evidence of the telephone numbers displayed on caller ID devices in the Moser residence and the administrative office of the Tazewell County jail. Defendant argues that no evidence was introduced to show that the caller ID devices were reliable. We disagree.

The admissibility of caller ID evidence was considered by

13

our supreme court in People v. Caffey, 205 Ill. 2d 52, 792 N.E.2d 1163 (2001). There, the court ruled that the required foundation for such evidence was proof that the caller ID device was reliable. The court stated that reliability must be determined on a case-by-case basis. Where testimony established that the same number always appeared for the same caller, reliability was sufficiently proved to allow testimony regarding the content of the telephone conversation. Caffey, 205 Ill. 2d 52, 792 N.E.2d 1163.

In this case, Jean Moser testified that, after the first call she accepted from the Tazewell County jail on July 1, 2003, she checked her caller ID device before answering each subsequent call. She testified that every time a friend called, that person's number was displayed on the caller ID. Every time she received a call from 353-9967 and accepted charges, she heard the same voice she had heard on July 1. In our opinion, this testimony adequately established the reliability of Moser's caller ID device. See Caffey, 205 Ill. 2d 52, 792 N.E.2d 1163.

The foundational evidence for admission of readout evidence from the county jail's caller ID device consisted of Detective Stoecker's testimony that the administrative offices' caller ID device was working properly at the time the case was under investigation. He also stated that there had been no problems with the device. Stoecker said that he used the device to verify

14

the number that would appear on the caller ID when a call was made by a correctional officer from the same telephone defendant had used when Moser received a call from 353-9967 on July 3. The number that was displayed on the administrative office's caller ID device was 353-9967. We believe that the State's foundational evidence, while not extensive, was marginally sufficient to show that the jail's caller ID device was a reliable indicator of the identity of the telephone used to facilitate the offense charged in this case. Accordingly, we cannot say that the trial court abused its discretion in admitting the caller ID readout evidence.

### 4. Defendant's Pro Se Posttrial Motion

Last, defendant seeks a remand for further posttrial proceedings on the ground that the trial court failed to conduct an inquiry into his pro se allegations of ineffective assistance of counsel.

Generally, when a defendant presents a pro se posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. People v. Moore, 207 Ill. 2d 68, 797 N.E.2d 631 (2003). If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the defendant's motion. However, if the allegations show possible neglect of the case,

15

new counsel should be appointed. <u>Moore</u>, 207 Ill. 2d 68, 797 N.E.2d 631. The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's allegations. <u>People v. Johnson</u>, 159 Ill. 2d 97, 636 N.E.2d 485 (1994). During this evaluation, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is usually necessary to assess what further action, if any, is warranted on the defendant's claim. <u>Moore</u>, 207 Ill. 2d 68, 797 N.E.2d 631.

In this case, the State concedes that the trial court erred in declining to make any inquiry into defendant's <u>pro</u> <u>se</u> claims of ineffective assistance of counsel. Case law supports defendant's request for further posttrial proceedings. Accordingly, we grant defendant's request and remand the cause for an inquiry into his <u>pro</u> <u>se</u> posttrial claims of ineffective assistance of counsel.

CONCLUSION

For the reasons stated, the judgment of the circuit court of Tazewell County is affirmed in part and remanded in part with directions.

Affirmed in part and remanded in part.

CARTER and LYTTON, JJ., concur.

16