FIFTH DIVISION
August 24, 2007

No. 1-05-2510

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| BENNIE BOBO, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Garritt Howard, |
| | ) | Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a jury trial, defendant Bennie Bobo was convicted of aggravated kidnapping and aggravated criminal sexual abuse and sentenced to consecutive 20- and 5-year terms in the Illinois Department of Corrections. Defendant argues that the trial court deprived him of his right to a fair trial by erroneously: (1) admitting approximately 30 irrelevant photographs of women's feet as impermissible propensity evidence; (2) allowing the State to renege on an agreement not to introduce defendant's statements; and (3) allowing the State to use a prior statement made by defendant that was not disclosed in discovery. Defendant also contends that his trial attorney provided ineffective assistance of counsel by requesting a jury instruction that included the "great bodily harm" element for aggravated kidnapping. Furthermore, defendant alleges that the trial court improperly denied his request for new counsel to assist him in his *pro se* posttrial allegations of ineffective assistance of counsel as required by *People v. Krankel*, 102

Ill. 2d 181 (1984). In addition, defendant contends that the trial court erred in finding no *prima facie* case of racial discrimination in the State's use of its peremptory challenges. Finally, defendant argues that the 20-year sentence imposed for aggravated kidnapping is excessive.

BACKGROUND

On July 27, 2003, 26-year-old J.L. was sexually assaulted. At trial, J.L. testified that she arrived home at about 4 a.m. She parked her car in front of her house. As she was walking inside, she heard a crash and saw another car hit her car from behind. J.L. identified Bennie Bobo as the driver of the car that crashed into hers. As she was writing down defendant's information, he grabbed her from behind and forced her into his car. She struggled, and he asked her, "Don't you think I have a gun? I could kill you." Defendant punched J.L. numerous times. At one point, he choked her with both hands and demanded that she stop screaming. Defendant drove off, then stopped suddenly at an intersection. J.L. slid into the footwell of defendant's car and started screaming. Defendant hit and punched J.L. several more times, then grabbed her by her hair so she could not move. When defendant stopped the car, he grabbed J.L.'s foot. J.L. struggled with the defendant and managed to pull a necklace off his neck. The defendant began licking and biting J.L.'s foot and toes. Then, he ordered J.L. to hold her foot on his penis and wiggle her toes. This lasted for approximately 10 minutes. After defendant sexually gratified himself using J.L.'s foot he took J.L. home.

When J.L. got out of the car, she immediately called her boyfriend. Her boyfriend and her sister's boyfriend took her to the police station. At the station, J.L. gave a description of her attacker, a description of his car, and several digits of his license plate number. From there, she

went to Glenbrook Hospital, where she underwent various tests including a DNA swab of her feet. When she was released from the hospital, J.L. showed Detective Metrick of the Northbrook Police Department where defendant had sexually assaulted her.

On July 30, 2003, Northbrook Officer Michael Terry stopped a maroon Dodge car that matched the description of the car driven by J.L.'s attacker. The driver of the car, Bennie Bobo, was arrested. J.L. later viewed a six-person lineup and identified Bobo as her attacker. DNA was obtained from a buccal swab of defendant's cheek. An officer collected samples of blood on the dashboard and hairs on the floor of the car driven by defendant. J.L.'s earrings were also found in the car. On defendant's cell phone, officers found approximately 30 pictures of women's feet.

Forensic scientist Kenneth Pfoser from the DNA section of the Northern Illinois Police Crime Lab testified as an expert in the field of forensic biology DNA analysis. He tested the swabs, blood samples and buccal samples for DNA. He determined the saliva from J.L.'s left foot was consistent with defendant.

Later, defendant gave three statements. These statements were contradictory to each other. In the first statement, defendant told the police he had consensual sex with J.L. In the second statement, defendant did not admit to any sexual contact; however, he admitted hitting J.L.'s car with his car, striking J.L. with his two closed fists, telling her to get into his car and "tussling" with her in his car as he drove around. In his third statement, he again admitted hitting J.L.'s car with his car, but added that he grabbed her and she got into his car. He further admitted striking J.L. while she was in his car and described sucking on her toes and licking her feet which

he admitted he liked to do sexually. At trial, the defense presented the theory that J.L.'s boyfriend had beaten her, and defendant came to her rescue. Defendant denied having any sexual contact with J.L.

Four motions relevant to this appeal were raised throughout defendant's trial: a motion *in limine* to preclude admission of approximately 30 photographs of women's feet; a motion *in limine* seeking to bar the prosecution from using an oral statement the State produced in violation of discovery requirements; a motion for mistrial based on the State reneging on its agreement not to use defendant's statement at trial, and a motion for new trial alleging a *Batson* violation in jury selection. The trial court denied all four motions.

Before sentencing, defendant submitted a *pro se* motion, alleging ineffective assistance of counsel. After hearing defendant's concerns, the trial court decided that this motion was without merit and denied it. Defendant was subsequently sentenced to a total of 25 years in prison. This appeal followed.

ANALYSIS

I. Cumulative Impact of Alleged Trial Errors

Defendant argues that the cumulative impact of three alleged trial errors deprived him of his right to a fair trial. These alleged errors were: (1) admitting approximately 30 irrelevant photos of women's feet as impermissible propensity evidence; (2) allowing the State to renege on its promise not to introduce defendant's statements; and (3) allowing the State to use a prior statement that was not disclosed in discovery. We address each alleged error in turn.

## A. Photographs

Defendant contends that he was denied a fair trial because the State improperly introduced approximately 30 highly prejudicial and irrelevant photographs of women's feet at trial.

To be admitted, evidence must have the tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. *People v. Peeples*, 155 Ill. 2d 422, 455-56 (1993). The primary requirements for the admissibility of photographs are accuracy and relevancy. *People v. Myles*, 131 Ill. App. 3d 1034, 1042 (1985). It is the trial court's function to decide the admissibility of evidence, and such findings will not be disturbed absent a showing of abuse of discretion. *People v. Kirchner*, 194 Ill. 2d 502, 539 (2000). Relevant photographs are admissible to prove a person's identity. *People v. Gerecke*, 45 Ill. App. 3d 510, 514 (1977).

Generally, evidence of offenses, acts, and wrongs other than those for which defendant is being tried is inadmissible. *People v. Baptist*, 76 Ill. 2d 19, 27 (1979). This is because such evidence has too much probative value. *People v. Romero*, 66 Ill. 2d 325, 330 (1977). " 'The law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime.' " *People v. Romero*, 66 Ill. 2d 325, 330 (1977), quoting *People v. Lehman*, 5 Ill. 2d 337, 342 (1955). Evidence of other offenses or bad acts is admissible to prove any material fact other than defendant's propensity to commit a crime. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). Such evidence can be admitted to show motive, intent, identity, absence of mistake or accident, modus operandi or the existence of a common plan or

design. *People v. Wilson*, 214 Ill. 2d 127, 135-36 (2005); *People v. Hansen*, 313 Ill. App. 3d 491, 500 (2000). Moreover, other extrinsic acts evidence may include acts which are not crimes. *People v. Davis*, 260 Ill. App. 3d 176, 190-91 (1994) (evidence of defendant's noncriminal sexual activity with consenting adults was relevant and admissible in prosecution for sexual activity with minors).

In the instant case, the court allowed approximately 30 pictures of women's feet to be admitted in evidence during defendant's trial for aggravated kidnapping and aggravated criminal sexual abuse. These pictures were found on defendant's cell phone at the time of arrest. In resolving defendant's motion *in limine* to preclude the admission of these photographs, the court found that the pictures were relevant and that their probative value was not outweighed by their prejudicial impact. Thus, the court allowed the pictures to be admitted into evidence, published to the jury, and sent back to the jury room. The State referenced these pictures in both its opening and closing statements to show identity and defendant's intent to sexually gratify himself.

First, we examine the use of the photographs by the State to prove identity. Identity was at issue in this case because the defense theory was that J.L.'s boyfriend beat her, not defendant. J.L. described sexual abuse in connection with defendant using her foot to complete the sexual assault upon her. This complaint was corroborated by bite marks and DNA traces that were found on her foot. Defendant was charged with aggravated criminal sexual abuse in that he committed an act of sexual conduct by the use of force or threat of force, "to wit: forced her foot to touch his penis" for his own sexual arousal or gratification. The pictures found in defendant's

cell phone provided circumstantial evidence that it was defendant who was responsible for sexually gratifying himself by using J.L.'s foot.

Additionally, the photographs were relevant to show defendant's intent. See *People v. Wilson*, 214 Ill. 2d 127, 137-38 (2005) (aggravated criminal sexual abuse is a specific intent crime and defendant's intent is at issue where he denied committing the crime). Defendant contended at trial that he did not have sexual contact with J.L. According to defendant, he picked J.L. up in his car and comforted her after she was in a fight with her boyfriend. Under this theory, defendant did not commit any kidnapping or sexual assault. To disprove this theory of innocence, the prosecution had to show that defendant intended to sexually gratify himself by his contact with J.L. *People v. Illgen*, 145 Ill. 2d 353, 373 (1991) (defendant's involvement in other acts was offered to prove absence of innocent frame of mind or presence of criminal intent). The photographs of women's feet, found on defendant's phone, demonstrated that the defendant was attracted to feet. J.L. described her sexual attack by defendant as including his licking and biting her foot then forcing her foot down his pants to masturbate himself. Defendant contested this version of what happened. Accordingly, the photographs were relevant to defendant's identity and to his intent to sexually gratify himself.

We are mindful that relevant evidence is inadmissible if the prejudicial effect of admitting that evidence substantially outweighs any probative value. *People v. Santos*, 211 Ill. 2d 395, 419 (2004). When arguing in his brief that the pictures are irrelevant, defendant contends that the photographs of feet are "benign" and do not indicate any prurient interest. The photos do not show defendant touching the feet or using them for sexual pleasure. However, the

defendant also contends that the pictures are highly prejudicial and should not have been allowed at trial. As explained above, the pictures are probative to show identity and intent. The trial court, when presented with all the facts and circumstances surrounding the pictures, concluded that the probative value of the pictures was not substantially outweighed by the potential for prejudice. Based on the record, we do not believe the trial court abused its discretion in deciding this matter.

Moreover, any error in admitting the photographs into evidence is harmless beyond a reasonable doubt. The evidence in the instant case was not closely balanced. J.L.'s testimony was credible and convincing, she identified the defendant within three days of the crime, defendant's DNA evidence was recovered from J.L.'s foot, the defendant made incriminating statements, and J.L.'s property was recovered from the car driven by defendant when he was arrested. Based on the strength of the evidence, we conclude that a trial without the pictures being admitted into evidence would have produced no different result. See *People v. Mertz*, 218 Ill. 2d 1, 65-66 (2005) (in prosecution for first degree murder, home invasion, and aggravated criminal sexual assault, any error in admitting descriptions of defendant's tattoos and e-mail address was harmless beyond a reasonable doubt in light of the overwhelming evidence); *People v. Pulliam*, 176 Ill. 2d 261, 276-77 (1997) (in prosecution for first degree murder, aggravated criminal sexual assault, and aggravated kidnapping, admission of book found in defendant's apartment titled "The Force of Sex" was harmless error because the properly admitted evidence of guilt was overwhelming); *People v. Sykes*, 341 Ill. App. 3d 950, 980 (2003) (in prosecution for predatory criminal sexual assault, attempted first degree murder, and aggravated kidnapping, any

error in admitting and publishing an inflammatory and irrelevant photograph of defendant was harmless, as evidence was not closely balanced).

## B. Defendant's Statements

In preparing for trial, defendant relied on the State's representation that it did not plan to use defendant's statements to the police in its case in chief. Defendant contends he was unfairly prejudiced when the prosecution reneged on that position halfway through trial because it rendered defendant's trial strategy useless.

At a pretrial motion *in limine* hearing, the prosecution moved to bar defense counsel from mentioning defendant's statements to the police in opening statements. In discussing this evidence, defense counsel stated that "the statements are going to go in, in which the defendant says in those statements that he engaged in that conduct." The State informed the court that it did not intend to introduce the defendant's statements in its case in chief. The State further indicated an objection based on hearsay "to counsel bringing it up in opening statements or ask[ing] any questions regarding that statement." The defense responded, "[a]s long as the State is saying they are not going to do it in their case in chief, we won't bring it up in opening." The court then indicated its understanding that both sides were in agreement. The State said that it would notify the defense of any strategic change on this issue.

At trial, the defense during its opening comments to the jury did not mention defendant's statements. However, during trial, the defense did cross-examine witnesses on the issue of identity. Based on that defense strategy, the State decided to introduce defendant's statements.

The trial court made the following ruling:

> "The State's initial strategy was that they did not intend to put in
> the statements of the defendant. But through defendant's cross, the
> strategy has been to make this an 'identification' case. So, I'm not
> surprised that the State has decided to change their strategy. There
> is nothing improper about it."

We are mindful that when a defendant initiates inquiry into a subject, he cannot complain about the testimony he invited. *People v. Davis*, 53 Ill. App. 3d 424 (1977). Based on the record, we conclude the experienced trial judge correctly ruled that the prosecution could introduce defendant's statements after he initiated a challenge to his identification as the perpetrator through cross-examination of the prosecution's witnesses.

## C. Late Discovery Disclosure

Defendant contends that he was denied a fair trial by the trial court erroneously allowing the prosecution to use a prior statement that was not disclosed during discovery.

Under Illinois Supreme Court Rule 412, the State is required to disclose to defense counsel "any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgment of such statements." 188 Ill. 2d R. 412(a)(ii). The State's duty to disclose is ongoing and requires prompt notification to the defendant of discovery of any additional material, up to and during trial. *People v. Hendricks*, 325 Ill. App. 3d 1097, 1103 (2001).

If the State fails to comply with discovery requirements, a trial judge can impose a range

of sanctions. The trial court may order the offending party to "permit discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." 134 Ill. 2d R. 415(g)(I); *People v. Damico*, 309 Ill. App. 3d 203, 213 (1999). Sanctions should be tailored to the circumstances of the case with the ultimate objective of compelling compliance, not punishing the offending party. *People v. Levin*, 207 Ill. App. 3d 923, 933 (1991). Several factors should be considered in imposing an appropriate sanction, including the strength of the undisclosed evidence, the likelihood that earlier notice might have helped defense counsel discount the evidence, and the willfulness of the State in its failure to disclose. *People v. Manzo*, 183 Ill. App. 3d 552, 557-58 (1989). The trial court's choice of sanction is given great deference and will only be disturbed by a showing of abuse of discretion. *Manzo*, 183 Ill. App. 3d at 558.

In the instant case, in preparing for trial, the State spoke with the arresting officers and discovered that defendant made a brief oral statement to the officers which had not been previously disclosed to the defense in discovery. In that first statement, defendant described his sexual contact with J.L. as consensual. The State then typed that statement up and tendered a copy of that statement to defense counsel the next morning, which was the morning of trial. The court considered what would be a proper sanction for the late disclosure and determined that precluding the prosecution from using the statement would not be in the best interests of justice. Instead, the court decided that the appropriate sanction was to grant defense counsel a continuance. The defense refused this continuance and made a motion to exclude the statement. The court denied this motion.

We note that, similar to the instant case, the Illinois Supreme Court in *People v. Hood* addressed the defendant's election to forego more moderate measures than exclusion to deal with a purported discovery violation by the State. See *People v. Hood*, 213 Ill. 2d 244 (2004). In *Hood*, the court ruled that defendant had waived any objection to the State's presentation of its previously undisclosed expert testimony. *Hood*, 213 Ill. 2d at 262-63. In support of its ruling, the court reasoned:

> "The record reveals that the trial court allowed defendant the opportunity to speak with the State's rebuttal witnesses in advance of their testimony. The trial court expressly advised defendant: 'Go talk to them if you want to. We'll give you time.' Nothing in the record indicates that defendant acted on the trial court's advice. In addition, defendant never requested a continuance to secure his own expert or to consider more fully Dr. Hindman's expected testimony. Instead, the only relief defendant sought was complete exclusion of Dr. Hindman's rebuttal testimony. *** When defendant elected to forgo more moderate measures available during trial to deal with the State's purported discovery violation, and instead proceeded with trial, the claimed error, if any, was waived. *Hood*, 213 Ill. 2d at 262-63.

In the instant case, defense counsel did object to the admissibility of the statement, contending that it was a discovery violation. However, similar to defense counsel in *Hood*,

defense counsel in the instant case did not request a continuance; rather, the only relief sought was complete exclusion of defendant's statement. Defense counsel did not ask for additional time to prepare for or to consider more fully the newly disclosed statement. Moreover, defense counsel refused the trial court's offer of a continuance for additional time to prepare. As such, defense counsel elected to forgo the more moderate measures available during trial to deal with the purported discovery violation. Under the principles articulated in *Hood*, the claimed error, if any, was waived. *Hood*, 213 Ill. 2d at 262-63.

Even if not waived, in the instant case, the disclosure was made before trial began and the trial court's offer to defense counsel of a continuance was fairly designed to give defendant an opportunity for additional preparation or investigation. See *People v. Hawkins*, 235 Ill. App. 3d 39, 42 (1992) (where trial had not begun, exclusion of defendant's confession was too severe a discovery sanction). See *People v. Harris*, 259 Ill. App. 3d 106, 109 (1994) (where prosecution did not disclose alleged statement until after jury selection, trial court did not abuse its discretion in granting a recess so defense counsel could speak to witness about statement made to her by defendant). The defendant's statement was brief and immediately disclosed by the State upon its discovery. Defendant made two other statements, and both statements were determined to be admissible at trial. The record does not reflect defendant was prejudiced. See *People v. Washington*, 182 Ill. App. 3d 168, 174 (1989) (where State omitted list of rebuttal witnesses in answers to discovery, but defendant did not request a continuance and failed to demonstrate prejudice, trial court did not abuse its discretion by failing to exclude the witnesses' testimony). This discovery violation was not willful, trial had not yet begun and the State disclosed the

13

information as soon as it reasonably could. Moreover, defense counsel rejected the trial judge's offer for additional time to prepare. Accordingly, we find no abuse of discretion and we will not disturb the finding of the trial court on this issue.

For the reasons previously discussed, we reject defendant's argument that the cumulative impact of these alleged trial errors denied defendant a fundamentally fair trial. Defendant's reliance on *People v. Blue*, 189 Ill. 2d 99, 138 (2000), is not persuasive. In *Blue*, the Illinois Supreme Court held that a pattern of intentional prosecutorial misconduct may so seriously undermine the integrity of judicial proceedings as to support reversal of a criminal conviction. In *Blue*, the supreme court reversed and remanded defendant's murder conviction because of errors involving the improper introduction and display of a dead police officer's uniform on a headless torso, inflammatory testimony by the victim's father concerning the distress and sorrow felt by the family over the loss of the victim, inflammatory testimony from a police commander, inflammatory testimony from the prosecutors, and improper prosecutorial argument. In the instant case, no similar intentional prosecutorial misconduct occurred. Unlike *Blue*, the rulings by the trial court, as well as the conduct of the prosecution did not deny defendant a fair trial. If any errors were made by the trial court, we conclude that, based on the strength of the evidence, they were harmless beyond a reasonable doubt.

## II. Defendant's Trial Strategy Regarding Jury Instruction Does Not Rise to the Level of Ineffective Assistance of Counsel

Defendant argues that his defense counsel was ineffective for objecting to the State's request to eliminate the element of great bodily harm in the aggravated kidnapping instruction. In support of that argument, defendant contends that this decision by his trial counsel prejudiced

14

him because it resulted in defendant receiving consecutive sentences for aggravated kidnapping and aggravated criminal sexual abuse.

In order to establish a violation of the constitutional right to effective assistance of counsel, a criminal defendant must first show that counsel's performance was deficient in that it was objectively unreasonable, and second, that the deficient performance so prejudiced the defense that defendant was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); *People v. Albanese*, 104 Ill. 2d 504 (1984). In *People v. Albanese*, the Illinois Supreme Court adopted the *Strickland* rule, stating that " '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Albanese*, 104 Ill. 2d at 525-26, quoting *Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064. A defendant has the burden of demonstrating that he has received ineffective assistance of counsel. *People v. Lundy*, 334 Ill. App. 3d 819, 829 (2002). A defendant's failure to make a requisite showing of either deficient performance or sufficient prejudice defeats an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

Evaluation of counsel's conduct cannot properly extend into areas involving the exercise of judgment, discretion or trial tactics even where the appellate counsel or the reviewing court would have acted differently. *People v. Mitchell*, 105 Ill. 2d 1, 12 (1984). Trial strategy cannot be a basis for finding counsel ineffective. *People v. Smith*, 177 Ill. 2d 53 (1997). "Neither

mistakes in strategy nor the fact that another attorney with the benefit of hindsight would have handled the case differently indicates the trial lawyer was incompetent." *People v. Negron*, 297 Ill. App. 3d 519, 538 (1998). Ineffective assistance claims are to be analyzed without "the distorting effects of hindsight." *Strickland,* 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. 2065. Defense counsel's choice of jury instruction is considered a tactical decision, within the discretion of defense counsel. *People v. Shlimon*, 232 Ill. App. 3d 449, 458 (1992); *People v. Houston*, 363 Ill. App. 3d 567, 576 (2006). Similarly, the decision not to object to an instruction may be considered a matter of professional judgment (*People v. Lostutter*, 227 Ill. App. 3d 1052, 1054 (1992) or trial strategy (*People v. Jenkins*, 209 Ill. App. 3d 249, 258-60 (1991)). Mistakes in strategy or tactics do not, alone, amount to ineffectiveness of counsel. *People v. Palmer*, 162 Ill. 2d 465, 476 (1994).

In the instant case, defendant was charged with aggravated kidnapping based on both infliction of great bodily harm during the offense and the commission of aggravated criminal sexual abuse. During the instruction conference the prosecution discussed dismissing count IV, alleging aggravated kidnapping based on infliction of great bodily harm during the offense. That count was in fact nolle prossed by the prosecution before closing argument. Count II, which was the remaining aggravated kidnapping charge, was based on infliction of great bodily harm during the offense or commission of another felony, to wit: aggravated criminal sexual abuse. During the jury instruction conference, the prosecution referenced the complexity of the jury instructions and discussed eliminating the great bodily harm element from the remaining aggravated kidnapping count. However, defense counsel took the position that the great bodily harm

16

element should be included in the aggravated kidnapping instructions, stating as follows: "It is not superfluous, and it's defined in the statute, and it was read to the jury, and it was based on the indictment."

We are mindful that if the great bodily harm element had been eliminated in the instant case, the aggravated sexual abuse would have been a predicate offense for the aggravated kidnapping, and a separate conviction for the aggravated sexual abuse would have been improper. *People v. Smith*, 183 Ill. 2d 425, 431-32 (1998) (multiple convictions are improper if they are based on predicate offenses). The State agrees that had defense counsel not objected to the instruction, defendant's convictions for aggravated criminal sexual abuse would have merged into his conviction for aggravated kidnapping, eliminating the requirement of consecutive sentencing.

As a result of defense counsel's requested instruction, the prosecution, in order to prove aggravated kidnapping, had to prove that defendant inflicted great bodily harm on J.L. or committed aggravated sexual abuse on her. The jury found defendant guilty of aggravated kidnapping and returned a general verdict form. The jury did not specify under which theory it was convicting or whether it was convicting under both theories. Thus, the court could presume that defendant was found guilty under both theories. See *People v. Morgan*, 197 Ill. 2d 404 (2001) (where an indictment contains several counts arising out of a single transaction and a general verdict is returned, the effect is that the defendant is guilty as charged in each count). We note our review of the record demonstrates more than ample evidence to sustain a conviction for

aggravated kidnapping under both theories. Thus, consecutive sentencing was justified by the evidence of aggravated kidnapping based on great bodily harm together with the evidence supporting the separate conviction for aggravated criminal sexual abuse.

In the instant case, the defense strategy as demonstrated in its cross-examination and closing argument was to challenge the prosecution's version of what happened between defendant and J.L. Defense counsel repeatedly questioned the credibility, certainty and motives of the prosecution's witnesses. The great bodily harm element was used by defense counsel as a centerpiece for his challenge to the credibility of J.L. For several pages during closing argument defense counsel referenced facts developed during trial which demonstrated that the harm suffered by J.L. did not constitute great bodily harm. He used that argument, which was corroborated by facts he developed through cross-examination, to support his theory of defense that there was a critical difference between the impression the prosecution wanted to create for the jury with its witnesses and the reality of what had in fact occurred between defendant and J.L.

In attacking the credibility of the prosecution's case, defense counsel argued regarding the element of great bodily harm that the prosecution had the burden of proving to the jury beyond a reasonable doubt that J.L. suffered great bodily harm, but the verbal and nonverbal conduct of J.L. was inconsistent with a person suffering from great bodily harm. He argued that J.L. came into the hospital alert and coherent, and according to the examining physician, all her major tests were unremarkable or normal. She was discharged within a few hours from the hospital and immediately began assisting the police in working on the case. Defense counsel further commented on the lack of evidence that "she was laid up or missed any time from work." The

theory of defense was that if J.L. was not believable in connection with the allegation of great bodily harm, then her credibility regarding her version of what happened that night regarding the sexual contact she described was also not believable. Had defense counsel been successful, the jury could have found defendant not guilty of both the aggravated kidnapping and the aggravated sexual abuse charges. However, the strength of the evidence defeated that strategy.

When confronted by overwhelming evidence, as in the instant case, defense counsel faces a difficult job. There was no misapprehension of the law by defense counsel in the instant case but, rather, a strategic decision to mount a challenge to the prosecution's case by vigorously attacking the evidence produced by the prosecution in connection with the element of great bodily harm. Under the defense theory, if defense counsel demonstrated J.L. was not believable the jury would find the prosecution failed to prove defendant guilty beyond a reasonable doubt. Defense counsel was well aware of the law, as it was clearly and accurately explained during the discussion of defendant's proposed instruction by the experienced trial judge. Defense counsel acknowledged that he understood the law contained in the instructions.

The choice of defense theory is ordinarily a matter of trial strategy, and counsel has the ultimate authority to decide this trial strategy. See *People v. Ramey*, 152 Ill. 2d 41, 53-55 (1992). In reviewing the conduct of trial counsel, we note defendant is entitled to effective, not perfect, representation (*People v. Odle*, 151 Ill. 2d 168, 173 (1992)), and this is to be determined from the totality of counsel's performance (*People v. Evans*, 186 Ill. 2d 83, 94 (1999)).

In the instant case, counsel presented a theory of defense which required the State to prove its case beyond a reasonable doubt. Here counsel pursued a strategy consistent with

defendant's testimony and challenged the State's evidence. The record reflects that defense counsel vigorously challenged the prosecution's case through cross-examination and closing argument. He made appropriate objections, pretrial and posttrial motions, and demonstrated an understanding of the law, as well as an understanding of the possible effect of strategic decisions he made in challenging the State's case. Although counsel's motions and defense strategy were unsuccessful, counsel subjected the State's case to meaningful adversarial testing. For the reasons previously discussed, based on the totality of counsel's performance, we reject defendant's argument that his trial counsel was ineffective.

### III. The Trial Court Conducted an Adequate Inquiry into Defendant's Posttrial *Pro Se* Claims of Ineffective Assistance of Counsel

Defendant argues that the trial court failed to conduct any inquiry into his *pro se* allegations of ineffective assistance of counsel, as required by *People v. Krankel*, 102 Ill. 2d 181 (1984). Defendant is seeking remand for appointment of new counsel and litigation of his ineffective assistance allegations. In support of the *Krankel* argument, defendant further relies on *People v. Nitz*, 143 Ill. 2d 82, 134-35 (1991), and contends that if any of his allegations of ineffective assistance of counsel "demonstrates 'possible neglect,' " then remand for appointment of counsel is necessary.

In *People v. Krankel*, the defendant's trial counsel did not contact an alibi witness or present an affirmative alibi defense at trial. *Krankel*, 102 Ill. 2d at 187. The defendant raised a *pro se* posttrial challenge to his attorney's competence at trial. *Krankel*, 102 Ill. 2d at 187. The Illinois Supreme Court held that the trial court should have appointed alternate counsel to represent defendant at the posttrial hearing regarding his claim of ineffective assistance.

20

*Krankel*, 102 Ill. 2d at 189. This case was remanded for a new hearing on the defendant's motion with newly appointed counsel. *Krankel*, 102 Ill. 2d at 189.

In interpreting *Krankel*, the Illinois Supreme Court in *Nitz* recognized there is no *per se* rule that new counsel must be appointed every time a defendant presents a *pro se* motion for a new trial alleging ineffective assistance of counsel, concluding as follows:

> "If the trial court conducts a preliminary investigation of the defendant's allegations and determines them to be spurious or pertaining only to trial tactics, no new counsel should be appointed to represent the defendant. If, however, the defendant's allegations of incompetence indicate that trial counsel neglected the defendant's case, the court should appoint new counsel to argue defendant's claims of ineffective assistance of counsel." *People v. Nitz*, 143 Ill. 2d 82, 134-35 (1991).

In *People v. Moore*, the Illinois Supreme Court further explained the procedures that trial courts should use to resolve these posttrial *pro se* claims of ineffectiveness of counsel. *People v. Moore*, 207 Ill. 2d 68 (2003). The trial court is not required to automatically appoint new counsel in every case, rather, the trial court should evaluate the factual basis of the defendant's claim. *Moore*, 207 Ill. 2d at 77-78. This can be accomplished in several ways. *Moore*, 207 Ill. 2d at 78. The court could simply ask the trial counsel about the circumstances surrounding the claim or ask defendant questions about his claim. *Moore*, 207 Ill. 2d at 78. Alternatively, the court can base its determination on its personal knowledge of defense counsel's performance at

trial or on the facial insufficiency of defendant's allegations. *Moore*, 207 Ill. 2d at 79. If a defendant's claim lacks merit or relates only to matters of trial strategy, the trial court may deny the motion without appointing new counsel. *Moore*, 207 Ill. 2d at 78.

In the instant case, defendant presented the trial court with three posttrial motions on August 2, 2005. One of these motions, the two-page "Motion for Appointment of Counsel Other than Public Defender," alleged ineffective assistance of counsel as follows: (1) failed to visit frequently enough; (2) failed to investigate past conviction of defendant; (3) failed to obtain a handwriting expert to analyze the signature on defendant's statement; (4) failed to challenge the "initial and signing of confession, that the defendant claim was not his"; (5) failed to file certain pretrial motions; and (6) failed to challenge the prosecution's discovery violation by not disclosing to the defense DNA evidence of hair and blood. The court instructed defendant to have a seat while he reviewed the motions. Then, the court told defendant that some of these claims were contained in the motion for a new trial that defendant's attorney had submitted. Defendant wanted to proceed with his ineffectiveness claims. The court told defendant that it would proceed with the sentencing hearing because there were witnesses waiting, but afterwards it would consider defendant's other issues.

The court heard defense counsel's motion for a new trial and sentencing information provided by both the defense and prosecution. Before imposing sentence, the court then listened to defendant's allegations regarding ineffectiveness of counsel and resolved defendant's *Krankel* motion. Defendant explained the facts and circumstances surrounding his allegations. The court asked questions about certain allegations and allowed defendant to clarify what he believed his

22

attorney should have done. Defendant complained that his trial attorney should have obtained an expert in handwriting to challenge his signature and initials on his confession. Defendant further argued that his attorney failed to challenge that the "State withheld DNA blood and hair" and that "[t]hey never got trace analyst on the hair or the blood" so that "we have no clue who it is." The court specifically addressed defendant's concern and asked whether defendant was "aware of the DNA evidence on the victim's foot." In response, first defendant claimed he was not aware of this evidence, then admitted that in fact he was aware of the evidence.

In specifically addressing defendant's *pro se* motion for appointment of new counsel, the experienced trial judge noted that defense counsel Robert Goodman faced an extremely difficult case because the prosecution's evidence was overwhelming. The record reflects defense counsel filed several motions, including a motion to quash arrest, an amended motion to quash identification, a motion to suppress statements and a *Batson* motion for mistrial. Defendant also filed various motions *in limine* including one to preclude admission of defendant's oral statement and one to bar admission of defendant's prior convictions. The trial judge commented that Goodman put up a "very vigorous defense." The judge stated: "[Goodman] argued strongly and vigorously for an acquittal in the face of overwhelming evidence to the contrary."

After giving defendant an opportunity to argue, explain and support his allegations and after listening to defendant, the trial judge specifically addressed the defendant as follows:

"THE COURT: Thank you, Mr. Bobo. Please have a seat

at counsel table.

Mr. Bobo spent most of his right to allocution talking about

23

his pro se motions that he filed, so I will deal with those first, because you are entitled to answers to those questions you asked, Mr. Bobo.

You are absolutely correct, you have a right to effective assistance of counsel. You don't have a right to perfect representation of counsel.

I presided over the case. Your attorney, Mr. Goodman, faced with an extremely difficult case for the defense because in this particular case, the State's case against you is an extremely strong case. The evidence against you is overwhelming.

The fact of that, I thought Mr. Goodman put up a very vigorous defense on your behalf.

I was absolutely surprised, for want of a better word, he was able to put up with as good a defense given the evidence he was confronted with in this particular case. He argued strongly and vigorously for an acquittal in the face of overwhelming evidence to the contrary.

You received highly competent representation in this particular case. That is why I denied your motion for appointment of other counsel. That is why I am denying your motion saying your right to effective assistance of counsel was in fact violated.

24

An attorney isn't required to exhaust all particular avenues, such as a handwriting expert or further DNA testing. Could it have brought something to light that maybe would have been favorable to your defenses? Sure, it is possible, but it is unlikely.

Even if that had been done, there is no way I could see that could have affected the outcome of your particular case in light of all the evidence that the State had.

[DEFENDANT]: Can I say something?

THE COURT: No, you had your chance. Now it is my turn, sir.

I reviewed all the allegations in your motion for appointment of counsel other than the public defender. Your memorandum points for retrial and your motion for discovery violation, I find all of them to be without merit. Those are all denied as well."

The trial judge then proceeded to sentence defendant. The record reflects that the trial judge's actions were appropriate. An adequate inquiry was conducted as to defendant's allegations of ineffective assistance of counsel. Consistent with the principles articulated by the Illinois Supreme Court in *Moore* as to whether there is ineffective assistance of counsel, the trial court can base the decision on a discussion of the claim with the defendant *or* defendant's

counsel *or* base its evaluation on its knowledge of defense counsel's performance at trial and the insufficiency of the allegations on their face. *Moore*, 207 Ill. 2d at 78-79.

In *Moore*, the Illinois Supreme Court made it clear that new counsel is not automatically required in every case in which a defendant alleges ineffective assistance of counsel in a *pro se* motion. *Moore*, 207 Ill. 2d at 77. If a defendant's claim lacks merit or relates to only matters of trial strategy, then the trial court is not required to appoint new counsel and may deny the *pro se* motion. *Moore*, 207 Ill. 2d at 78. In the instant case, the trial court based its evaluation on its knowledge of defense counsel's performance at trial, on the insufficiency of the allegations in the context of the trial record, and on discussion with defendant.

Upon review of the defendant's argument, the operative concern is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel. *People v. Johnson*, 159 Ill. 2d 97, 125 (1994). The record in the instant case reflects the trial court reviewed defendant's motion and specifically gave defendant the opportunity to argue, explain, and support his allegations. See *People v. Cummings*, 351 Ill. App. 3d 343, 352-53 (2004) (trial court conducted adequate inquiry because it read defendant's motion and gave defendant the opportunity to argue, explain, and support his allegations). The trial judge listened to defendant and discussed his allegations of ineffective assistance of counsel with him. The record reflects that the trial court's actions were appropriate and demonstrated adequate review and inquiry into defendant's allegations of ineffective assistance of counsel. For the reasons previously discussed, we reject defendant's argument that the case should be remanded to the trial court for appointment of new counsel to conduct further proceedings in connection with

defendant's claims of ineffective assistance of counsel.

We note defendant includes in his briefs several examples of ineffective assistance that the trial judge was not specifically confronted with in the context of defendant's *pro se* motion for new counsel. Defendant argues that his allegation that trial counsel failed to talk to him necessarily incorporates the allegation of ineffective assistance for exposing defendant to greater criminal liability when he decided to have the jury instructed on alternative bases for aggravated kidnapping by including both infliction of great bodily harm and aggravated criminal sexual abuse. The record rebuts defendant's contention that in fact the trial judge was presented with this allegation in the context of his motion for new counsel. However, for the reasons previously discussed, the record does not reflect ineffective assistance of counsel regarding defense counsel's jury instruction strategy.

Similarly, defendant contends that his general allegation that his trial counsel failed to preserve issues for appeal incorporates the specific allegation of ineffective assistance for trial counsel's failure to object to duct tape evidence. The record does not reflect the trial judge was presented with this allegation in the context of defendant's motion for new counsel. We recognize the relaxed pleading requirements for *pro se* allegations of ineffective assistance of counsel. See *Moore*, 207 Ill. 2d at 79 (to trigger an inquiry under *Krankel*, "a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention"). However, a defendant still must meet minimum requirements in order to trigger a preliminary inquiry by the trial court. *People v. Ward*, 371 Ill. App. 3d 382, 431 (2007). A bald allegation of ineffective assistance is insufficient; the defendant must raise specific claims with supporting facts before

the trial court may consider the allegations. *People v. Radford*, 359 Ill. App. 3d 411, 418 (2005). Where a defendant's claims are conclusory, misleading, or legally immaterial, or do not bring to the trial court's attention a colorable claim of ineffective assistance of counsel, the trial court may be excused from further inquiry. *People v. Johnson*, 159 Ill. 2d 97, 126 (1994) ; *People v. Ford*, 368 Ill. App. 3d 271, 276 (2006) (remand for further inquiry was not necessary where the defendant's allegations were facially insufficient; set forth in a general and conclusory manner; and contradicted by other allegations, facts on record, and the prosecutor).

In the instant case, defendant failed to identify relevant facts regarding duct tape evidence which would have alerted the trial judge as to the basis for the ineffective assistance claim. Instead, defendant raised only a general conclusory allegation that his trial counsel failed to preserve issues for appeal. Thus, defendant's allegation did not require further inquiry (*Radford*, 359 Ill. App. 3d at 418) or the appointment of new counsel (see *People v. Towns*, 174 Ill. 2d 453, 465-68 (1996)).

Finally, defendant argues that his general allegation that defense counsel failed to visit or talk with him necessarily incorporates an allegation of ineffective assistance for pursuing a defense strategy based on defense counsel's understanding that the prosecution could not use defendant's inculpatory statements in his case in chief. The record does not reflect that this specific allegation was brought to the attention of the trial judge in the context of defendant's motion for new counsel. *Radford*, 359 Ill. App. 3d at 418 (defendant must raise specific allegation with supporting facts before trial court may consider defendant's claims). Additionally, we reject that argument, because the record reflects only a conclusory allegation

lacking any factual basis. See *Towns*, 174 Ill. 2d at 465-68 (when defendant fails to identify relevant facts, appointment of new counsel is not required).

### IV. Defendant Failed to Establish a *Prima Facie* Case of Racial Discrimination in State's Exercise of Peremptory Challenges

Defendant alleges the trial court erred in finding defendant failed to establish a *prima facie* case of racial discrimination. In support of that argument, defendant contends the State removed from the jury by use of its peremptory challenges two unbiased, qualified jurors solely because of race. As a result, defendant seeks remand of the instant case for a second-stage *Batson* proceeding during which the State must provide a racially neutral reason for the challenge.

In *Batson v. Kentucky*, the United States Supreme Court established a three-step process for evaluating a claim that the State has exercised its peremptory challenges in a racially discriminatory manner. *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 79, 106 S. Ct. 1712 (1986). First, the defendant must establish a *prima facie* case of purposeful racial discrimination. *Batson*, 476 U.S. at 87, 90 L. Ed. 2d at 81, 106 S. Ct. at 1718. If a *prima facie* case is established, the burden shifts to the State to provide a race-neutral reason for the challenge. *Batson*, 476 U.S. at 87, 90 L. Ed. 2d at 81, 106 S. Ct. at 1718. Finally, the court must evaluate the reasons given and decide if purposeful racial discrimination occurred. *Batson*, 476 U.S. at 87, 90 L. Ed. 2d at 81, 106 S. Ct. at 1718.

To show *prima facie* racial discrimination, the defendant must prove that there are relevant circumstances that raise an inference that the State used peremptory challenges to remove prospective jurors based upon their race. *Batson*, 476 U.S. at 88, 90 L. Ed. 2d at 82, 106

S. Ct. at 1718. Courts consider the following circumstances in determining whether a defendant has established a *prima facie* case of racial discrimination in jury selection: (1) racial identity between the defendant and the excluded venireperson; (2) a pattern of strikes against African-Americans; (3) a disproportionate use of peremptory challenges against African-Americans; (4) the level of representation of African-Americans in the venire as opposed to the jury; (5) the prosecutor's questions and statements during *voir dire* examination and while exercising peremptory challenges; (6) whether the excluded African-American venirepersons were a heterogeneous group sharing race as their only common characteristics; and (7) the race of the defendant, victim and witnesses. *People v. Rivera*, 221 Ill. 2d 481, 501(2006), quoting *People v. Williams*, 173 Ill. 2d 48, 71 (1996). A trial judge's determination of whether a defendant has demonstrated a *prima facie* case of discriminatory jury selection will not be overturned unless it is against the manifest weight of the evidence. *People v. Williams*, 173 Ill. 2d at 71.

A trial court's third-stage finding on the ultimate issue of purposeful racial discrimination "rests largely on credibility determinations." *People v. Rivera*, 221 Ill. 2d 481, 502 (2006). As a consequence, review of third-stage findings is deferential and reversal is proper only if the trial court's decision is clearly erroneous. *Rivera*, 221 Ill. 2d at 502. Where a *Batson* objection reaches the second stage, but the defendant does not object when the State fails to give a race-neutral reason for a peremptory strike, the argument is waived. *People v. Primm*, 319 Ill. App. 3d 411, 423 (2000). Moreover, "challenges to the composition of a jury must be brought before the jury is sworn." *People v. Fair*, 159 Ill. 2d 51, 71 (1994). Thus, if a defendant does not object to the State's peremptory challenges before this time, the issue is waived on review. *Batson*, 476

U.S. at 99, 90 L. Ed. 2d at 89, 106 S. Ct. at 1724.

In the instant case, defense counsel preserved this issue for review by making a motion for mistrial at the end of jury selection. In this motion, defense counsel noted that the State used peremptory challenges to exclude two African-American jurors. Counsel also stated that defendant and the excluded jurors shared the same race and that there were no African-Americans on the panel.

We do not dispute that the State used two of the five peremptory challenges it exercised to exclude two African-American jurors during jury selection. We are mindful that the number of African-American venirepersons peremptorily challenged, without more, cannot establish a *prima facie* case of discrimination. See *People v. Garrett*, 139 Ill. 2d 189, 203 (1990). We are also mindful that the exclusion of even one venireperson because of race is unconstitutional and violates *Batson*. *People v. Peeples*, 155 Ill. 2d 422, 468 (1993).

The record in the instant case does not reflect that the two African-American jurors were excluded on the basis of race. The State's questions and statements during *voir dire* did not reflect purposeful racial discrimination. Moreover, the record reflects that the two excluded venirepersons that were identified by defendant shared more than racial characteristics — namely, a history of involvement with the legal process. Mr. Straughter's daughter was convicted of drug possession and he thought the State was a bit heavy handed in the prosecution of his daughter's case and he was "not sure" if he could limit his deliberations to apply the facts to the law and not consider the punishment. Mrs. Cameron had previous jury experience at the Daley Center which deliberated for approximately two weeks before concluding they could not

resolve the case.

Finally, while the defendant was African-American and J.L. was Asian-American, the record does not reflect that the crime was racially motivated. Based on our review of the record, it was not against the manifest weight of the evidence for the trial court to conclude defendant failed to establish a *prima facie* case of purposeful racial discrimination.

### V. The Trial Court Did Not Abuse its Discretion by Sentencing Defendant to 20 Years in Prison for Aggravated Kidnapping

Defendant alleges that the trial court's sentence of 20 years in prison for aggravated kidnapping was excessive, based on the circumstances of the offense, his limited prior record, and his potential for rehabilitation.

A trial court's imposition of a sentence is entitled to great deference. *People v. O'Neal*, 125 Ill. 2d 291, 297 (1988). A reviewing court has the authority to reduce excessive sentences only where the trial court abused its discretion in imposing the sentence. 134 Ill. 2d R. 615(b)(4); *People v. Porter*, 277 Ill. App. 3d 194, 200 (1995). A reviewing court should not substitute its judgment for that of the trial court and reduce an offender's sentence just because it would have weighed the factors differently and reached a different result. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). The trial judge has a far better opportunity to consider these factors than a reviewing court, which must rely solely on the record. *Streit*, 142 Ill. 2d at 19. Therefore, the trial court's decisions regarding sentencing are afforded great weight and deference. *People v. Perrequet*, 68 Ill. 2d 149, 154 (1977). If the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law and the nature of the offense. *People v. Cabrera*, 116 Ill. 2d 474, 493-94 (1987).

The record reflects the experienced trial judge relied on proper aggravating and mitigating factors in his sentencing decision and the sentence was an appropriate exercise of discretion. Relevant factors in determining an appropriate sentence include the nature of the crime, protection of the public, deterrence and punishment, as well as the defendant's rehabilitative prospects and youth. See *People v. Whitehead*, 171 Ill. App. 3d 900, 908 (1988). Additionally, a trial court must base its sentencing determination on the particular circumstances of each case, considering such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Streit*, 142 Ill. 2d at 18-19. The weight attributed to each factor in aggravation and mitigation in imposing a sentence depends on the particular circumstances in each case. *People v. D'Arezzo*, 229 Ill. App. 3d 428 (1992).

It is important to note that a trial court need not articulate the process by which it determines the appropriateness of a given sentence. *Wright*, 272 Ill. App. 3d at 1045. However, in the instant case, the record reflects the judge examined factors in aggravation and mitigation. Further, the judge took into account the information contained in the presentence investigation report. We find the record reflects that the judge balanced the factors in aggravation and mitigation and crafted an appropriate sentence to punish as well as rehabilitate. The record reflects that the proper factors in aggravation and mitigation were appropriately considered by the judge before sentencing defendant.

Under Illinois law, aggravated kidnapping is a Class X felony, punishable by a range of 6 to 30 years' imprisonment. 720 ILCS 5/10-2 (West 2004); 730 ILCS 5/5-8-1 (West 2004). In the instant case, the sentence imposed was within the statutory range. Based on the record, the trial court gave proper consideration to factors in aggravation. The trial court also properly

considered the mitigation presented to him. See *People v. Garrison*, 209 Ill. App. 3d 979 (1991) (holding that where mitigating evidence is before the trial judge, he is presumed to have considered it absent some indication, other than the severity of the sentence itself, to the contrary).

We defer to the trial court's determination of the appropriate sentence, which was well within statutory guidelines. For a reviewing court to modify a sentence within the statutory limits, the sentence imposed must reflect a clear departure from the spirit and purpose of the fundamental law and the constitutional requirement that the sentence be proportionate to the nature of the offense. *People v. Beck*, 295 Ill. App. 1050 (1998). Based on our review of the record, we do not find that the sentence imposed in this case is at odds with the spirit and purpose of the law, or disproportionate to the nature of the offense.

## CONCLUSION

For the reasons previously discussed, we affirm the conviction for aggravated criminal sexual abuse and the conviction for aggravated kidnapping. We affirm the sentence of 20 years in the Illinois state penitentiary for the aggravated kidnapping conviction and the consecutive sentence of 5 years' imprisonment for the aggravated criminal sexual abuse conviction.

Affirmed.

TULLY and GALLAGHER, JJ., concur.